PRESENT: All the Justices

RODNEY L. DIXON, JR.

v.  Record No. 041952    OPINION BY JUSTICE BARBARA MILANO KEENAN
    Record No. 041996                      June 9, 2005

COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA
FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
John C. Morrison, Jr., Judge

In these appeals, we consider the denial of a defendant's motion to suppress certain statements he made to the police before being advised of his rights under Miranda v. Arizona, 384 U.S. 436 (1966).  The central issue we resolve is whether a suspect detained at the scene of a traffic accident was in police custody for purposes of the Miranda rule after the suspect was placed in handcuffs and locked in a police patrol car.

Rodney Lee Dixon, Jr. was charged in the City of Norfolk with driving under the influence (DUI), third offense within the past five years, in violation of Code § 18.2-270(C); driving on a suspended license, in violation of Code § 18.2-272; and refusing to submit to a breath or blood alcohol test, in violation of Code § 18.2-268.3.  Before trial in the circuit court, Dixon filed a motion to suppress certain statements he made to the arresting officer, claiming a violation of his rights under the Fourth, Fifth, and Sixth Amendments to the

Constitution of the United States, and the Constitution and Code of Virginia. The circuit court denied the motion.

Dixon entered a conditional guilty plea to all the charges, reserving his right to appeal the denial of his motion to suppress. See Code § 19.2-254. The circuit court accepted Dixon's pleas and sentenced him to a total of six years' imprisonment and a $1,000 fine, five years and $500 of which were suspended. The court also suspended Dixon's driver's license for one year.

The Court of Appeals, in an unpublished order, denied Dixon's petition for appeal of his convictions for DUI and driving on a suspended license. Dixon v. Commonwealth, Record No. 3261-03-1 (July 29, 2004). The Court stated that Dixon was not in police custody at the time he made incriminating statements to the police and that, therefore, the circuit court did not err in denying the motion to suppress. The Court also determined that it lacked jurisdiction to consider Dixon's appeal of the circuit court's judgment on the charge of refusing to submit to a breath or blood alcohol test, and transferred that case to this Court.

We consolidated Dixon's appeal of the circuit court's judgment on the refusal charge with his appeal of his criminal convictions from the Court of Appeals. Under established principles of appellate review, we will state the evidence in

2

the light most favorable to the Commonwealth, the prevailing party in the circuit court. Murphy v. Commonwealth, 264 Va. 568, 570, 570 S.E.2d 836, 837 (2002); McCain v. Commonwealth, 261 Va. 483, 486, 545 S.E.2d 541, 543 (2001).

On February 23, 2003, at about 2:40 a.m., Virginia State Trooper Christopher S. Jackson arrived at the scene of a motor vehicle accident and fire on Interstate Route 64 in Norfolk. As Trooper Jackson approached officers from the Norfolk Police Department who initially had responded to the accident scene, Jackson saw that the officers had placed handcuffs on Dixon and were standing near him. Trooper Jackson observed that Dixon appeared "upset," was acting "unruly" toward the officers, and had a "strong odor" of an alcoholic beverage emanating from his person.

After the Norfolk officers removed the existing handcuffs, Trooper Jackson placed his own set of handcuffs on Dixon, thereby securing Dixon's hands behind his back. Jackson then placed Dixon in the front passenger seat of his patrol car and locked the car door. Jackson told Dixon that he was not under arrest but "was being detained for investigative reasons [and] for [Dixon's and Trooper Jackson's] safety."

After verifying Dixon's name and date of birth, Trooper Jackson began questioning Dixon about the accident. Jackson asked Dixon whether he was operating the vehicle that caught

3

fire, and whether he "had anything to drink during the evening." Dixon replied that he had consumed four or five beers about an hour earlier, and that he had "pulled" his car over to the side of the road because the car was malfunctioning.

Trooper Jackson administered several "field sobriety tests," some of which Dixon refused to complete. Dixon also refused to submit to a preliminary breath alcohol test. At that point, Trooper Jackson informed Dixon that he was under arrest and advised him of his Miranda rights.

Before trial, Dixon filed a motion to suppress the statements he made to Trooper Jackson about his alcohol consumption and operation of the vehicle. Dixon argued that he was in police custody when he was handcuffed and locked in the patrol car and, thus, that any statements he gave before being advised of his Miranda rights were obtained in violation of the Fifth Amendment.

The circuit court denied Dixon's motion. The court concluded that Trooper Jackson had reasonable suspicion that Dixon had been involved in criminal activity, and that Jackson's actions in securing the handcuffs on Dixon and placing him in the locked patrol car did not convert the investigative detention into a custodial arrest.

In its order denying Dixon's petition for appeal of his criminal convictions, the Court of Appeals stated that Dixon was

4

not in custody when he made the incriminating statements because Trooper Jackson repeatedly advised Dixon that he was not under arrest, and placed him in handcuffs due to concerns for safety and possible escape. The Court concluded that, therefore, Trooper Jackson was not required to advise Dixon of his Miranda rights before questioning him about the accident.

On appeal to this Court, Dixon argues that his Fifth Amendment rights were violated because a reasonable person in his situation would have concluded that he was not free to leave the scene of the accident. According to Dixon, the conduct of the officers at the scene converted what normally would be considered an investigative detention into a custodial arrest. Dixon contends that he was subjected to custodial interrogation, within the meaning of Miranda, because he was placed in handcuffs and involuntarily locked in the patrol car before being questioned by the police.

In response, the Commonwealth argues that Trooper Jackson's actions were consistent with an investigative detention permitted under Terry v. Ohio, 392 U.S. 1 (1968), and were necessary under the circumstances. The Commonwealth asserts that reasonable restraint is permissible during an investigative detention, and that Trooper Jackson placed Dixon in handcuffs for safety reasons due to Dixon's "hostile" and "defiant" attitude. The Commonwealth also contends that it was necessary

to place Dixon in the locked patrol car because of the dangerous highway location and Dixon's prior attempts to leave the scene. Thus, the Commonwealth argues that under the circumstances presented, the circuit court correctly concluded that Dixon was not in police custody at the time he made the incriminating statements.

In resolving this issue, we review settled principles of constitutional law that govern our inquiry. Under Miranda, before a suspect in police custody may be questioned by law enforcement officers, the suspect must be warned that he has a right to remain silent, that any statement he makes may be used as evidence against him, and that he has the right to have an attorney, either retained or appointed, present to assist him. 384 U.S. at 444. Statements obtained by law enforcement officers in violation of this rule generally will be subject to exclusion for most proof purposes in a criminal trial. Id. at 479; see Stansbury v. California, 511 U.S. 318, 322 (1994). But see Oregon v. Elstad, 470 U.S. 298 (1985) (exception for second statement obtained as a result of prior, unwarned statement); New York v. Quarles, 467 U.S. 649 (1984) (public safety exception); Harris v. New York, 401 U.S. 222 (1971) (impeachment exception).

The safeguards required by Miranda must be afforded to a suspect as soon as the police have restricted his freedom of

action to a "degree associated with formal arrest." Berkemer v. McCarty, 468 U.S. 420, 440 (1984) (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983)); see Stansbury, 511 U.S. at 322; Burket v. Commonwealth, 248 Va. 596, 605, 450 S.E.2d 124, 129 (1994). Therefore, "[i]f a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by Miranda." Berkemer, 468 U.S. at 440; see Oregon v. Mathiason, 429 U.S. 492, 495 (1977).

Because the determination whether a suspect is "in custody" requires an objective focus, the only relevant inquiry is how a reasonable person in the suspect's situation would have understood his circumstances. Berkemer, 468 U.S. at 442; see Stansbury, 511 U.S. at 323-25; George v. Commonwealth, 242 Va. 264, 272, 411 S.E.2d 12, 17 (1991). Thus, the subjective perspective of either the suspect or the interrogating police officer has no bearing on the issue whether the suspect was "in custody" at the time he was questioned by the police. Stansbury, 511 U.S. at 324; Berkemer, 468 U.S. at 442; George, 242 Va. at 272, 411 S.E.2d at 17.

As the Supreme Court observed in Berkemer, the ordinary traffic stop is more analogous to a "Terry stop" than to restrictions associated with a formal arrest. 468 U.S. at 439.

7

Because both ordinary traffic stops and "Terry stops" are comparatively brief and noncoercive in nature, the Supreme Court has held that persons temporarily detained pursuant to such stops generally are not "in custody" for purposes of the Miranda rule. Id. at 440. However, because a suspect may be "in custody" for purposes of Miranda before he actually has been arrested, we consider the circumstances of Dixon's detention under the test stated by the Supreme Court in Berkemer to determine whether a reasonable person in Dixon's position would have concluded that his freedom was being curtailed to a degree associated with a formal arrest. Id. at 442; see Stansbury, 511 U.S. at 322; Beheler, 463 U.S. at 1125; Burket, 248 Va. at 605, 450 S.E.2d at 129; George, 242 Va. at 272, 411 S.E.2d at 17.

This detention occurred around 3:00 a.m. on the shoulder of an interstate highway. Although Trooper Jackson told Dixon that he was not under arrest, Jackson secured Dixon's hands in handcuffs behind his back and placed him in the front seat of the locked patrol car. Jackson informed Dixon that he was being detained for investigative and safety considerations. We conclude that under these circumstances, a reasonable person in Dixon's position would have understood that his freedom was being restricted to a degree associated with a formal arrest. See Berkemer, 468 U.S. at 442; Stansbury, 511 U.S. at 322;

8

*Beheler*, 463 U.S. at 1125; *Burket*, 248 Va. at 605, 450 S.E.2d at 129; *George*, 242 Va. at 272, 411 S.E.2d at 17.

Our conclusion in this regard is influenced most strongly by the combined factors of Dixon being restrained in handcuffs and being locked in a police patrol car. While the presence of either of these factors, in the absence of the other, may not result in a curtailment of freedom ordinarily associated with a formal arrest, the presence of both factors compels the conclusion that a reasonable person subjected to both restraints would conclude that he was in police custody.

This holding is in accord with decisions from several other states which, under varying other circumstances, have concluded that a suspect was "in custody" for purposes of the *Miranda* rule after being placed in handcuffs and secured in a police patrol car. *See* *State v. Frank*, 986 P.2d 1030, 1036 (Idaho Ct. App. 1999); *Gibson v. State*, 733 N.E.2d 945, 953 (Ind. Ct. App. 2000); *Commonwealth v. Gordon*, 716 N.E.2d 1036, 1038 (Mass. App. Ct. 1999); *State v. Johnston*, 572 S.E.2d 438, 441 (N.C. Ct. App. 2002). The decisions of these courts, and our holding today, reflect the observation in *Berkemer* that although the determination whether a suspect is in custody for purposes of *Miranda* is not an "easily administered" rule, the rule serves well to protect both the constitutional rights of detained

9

citizens and the legitimate interests of law enforcement.  See Berkemer, 468 U.S. at 441.

Accordingly, under the facts and circumstances before us, we hold that Trooper Jackson was required to give Miranda warnings to Dixon before questioning him, and that the circuit court erred in denying Dixon's motion to suppress with regard to the criminal charges pending against him.  Because the charge of refusing to submit to a breath or blood alcohol test, Code § 18.2-268.3, is civil, rather than criminal in nature, see Deaner v. Commonwealth, 210 Va. 285, 290, 170 S.E.2d 199, 202 (1969), our holding does not affect the circuit court's adjudication of that charge.[*]

For these reasons, we will affirm the circuit court's judgment on the refusal charge.  We will reverse the Court of Appeals' judgment on the criminal convictions under Code § 18.2-270(C) and Code § 18.2-272, and remand the criminal charges for a new trial, if the Commonwealth so elects, in accordance with the principles expressed in this opinion.

Record No. 041996 – Affirmed and final judgment.
Record No. 041952 – Reversed and remanded.

---

[*] Dixon's counsel conceded at oral argument that our resolution of the issue whether the circuit court erred in denying the motion to suppress would not affect the circuit court's judgment on the refusal charge.

10