COURT OF APPEALS OF VIRGINIA

Present:   Judges Kelsey, Haley and Petty

CHRISTOPHER NATHANIEL ARCHIE

                                                    MEMORANDUM OPINION[*] BY
v.             Record No. 0585-06-4                 JUDGE D. ARTHUR KELSEY
                                                    JULY 31, 2007

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
William D. Hamblen, Judge

(Myron J. Teluk, on briefs), for appellant.  Appellant
submitting on brief.

(Robert F. McDonnell, Attorney General; Susan M. Harris,
Assistant Attorney General, on brief), for appellee.
Appellee submitting on brief.


Convicted of armed bank robbery and wearing a mask, Christopher Nathaniel Archie

contends on appeal his convictions should be overturned because the trial court erroneously denied

his motion to suppress statements he made to the police and physical evidence allegedly seized as

a result of those statements.  We disagree and affirm his convictions.

Police officers stopped Archie shortly after a reported bank robbery, suspecting he might

be one of the armed robbers.  On appeal, Archie does not contest the officers' right to conduct the

investigatory stop under Terry v. Ohio, 392 U.S. 1 (1968), and he accepts without contest the

reasonableness of the officers' suspicions.[1]  Instead, Archie argues the physical restraints imposed

upon him at the time of the initial stop went beyond what was necessary for investigatory purposes

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] While an arrest requires probable cause, a mere investigatory stop requires only a
"reasonable suspicion" that criminal activity "may be afoot."  United States v. Arvizu, 534 U.S.
266, 273 (2002) (citations omitted).  The likelihood of criminality "need not rise to the level
required for probable cause, and it falls considerably short of satisfying a preponderance of the
evidence standard" applicable in other contexts.  Id. at 274 (citation omitted).

and converted the encounter into a *de facto* arrest requiring a showing of probable cause — a higher standard of probability which Archie claims the officers did not have.

The evidence before the trial court showed that the officers, upon finding Archie in apparent flight from another officer, drew their weapons and ordered him to stop and lie down on the ground. They then handcuffed Archie and placed him in the back of a locked police cruiser. The trial court found the officers used reasonable methods to protect themselves during the stop, particularly given the serious nature of the crime being investigated. These reasonable restraints, the trial court held, did not convert the investigatory detention into a *de facto* arrest requiring a showing of probable cause.[2]

We agree with the trial court.[3] To protect themselves during a valid <u>Terry</u> stop, officers may draw their weapons, handcuff a suspect, and even use or threaten to use force if the circumstances reasonably warrant it. <u>See</u> <u>generally</u> <u>Thomas v. Commonwealth</u>, 16 Va. App. 851,

---

[2] On appeal, Archie specifically limits his *de facto* arrest argument to the initial stop: "On April 2, 2005, *at 11:30 a.m.*, *when* the police officers . . . commanded the accused to stop, get down on his knees, walk to the police cruiser and then handcuffed him and placed him in the back seat of the police cruiser with the doors locked so that he could not leave . . . the accused was arrested even though a formal arrest did not occur." Appellant's Br. at 6 (emphasis added). Because Archie does not argue later circumstances converted the stop into a *de facto* arrest, <u>cf.</u> <u>Kaupp v. Texas</u>, 538 U.S. 626, 632-33 (2003) (*per curiam*), we address only the specific question he presented on appeal. Under Rule 5A:12(c), "[o]nly questions presented in the petition for appeal will be noticed by the Court of Appeals." <u>Selph v. Commonwealth</u>, 48 Va. App. 426, 434, 632 S.E.2d 24, 28 (2006) (citation omitted).

[3] Our ruling makes it unnecessary to address whether the officers had probable cause at the time of the stop. <u>See</u> <u>Maryland v. Pringle</u>, 540 U.S. 366, 371 (2003) (describing probable cause as lower than preponderance of the evidence). Nor need we decide whether all or part of the unsuppressed evidence would have been discovered notwithstanding Archie's allegedly unconstitutional *de facto* arrest, <u>Warlick v. Commonwealth</u>, 215 Va. 263, 265-66, 208 S.E.2d 746, 748 (1974), or whether the harmless error doctrine renders moot Archie's suppression motion, <u>see</u> <u>Tynes v. Commonwealth</u>, 49 Va. App. 17, 23 n.3, 635 S.E.2d 688, 690 n.3 (2006) ("Code § 8.01-678 makes 'harmless-error review required in *all* cases.'" (citation omitted and emphasis in original)).

857, 434 S.E.2d 319, 323 (1993), aff'd en banc, 18 Va. App. 454, 444 S.E.2d 275 (1994).[4]  A

Terry stop involves "a police investigation 'at close range,' when the officer remains particularly

vulnerable in part because a full custodial arrest has not been effected, and the officer must make

'a quick decision as to how to protect himself and others from possible danger.'"  Servis v.

Commonwealth, 6 Va. App. 507, 519, 371 S.E.2d 156, 162 (1988) (emphasis omitted) (quoting

Michigan v. Long, 463 U.S. 1032, 1052 (1983) (quoting Terry, 392 U.S. at 24, 28)).  A dangerous

suspect, after all, "is no less dangerous simply because he is not arrested."  Id.

Coercive measures, therefore, "do not convert a stop and frisk into an arrest so long as the

methods of restraint used are reasonable to the circumstances."  Johnson v. Commonwealth, 20

Va. App. 49, 55, 455 S.E.2d 261, 264-65 (1995) (citation omitted).  Questions of scope, whether

in terms of duration or degree of physical coercion, must be answered in light of the Fourth

Amendment's reasonableness standard.  "When 'evaluating whether an investigative detention is

unreasonable, common sense and ordinary human experience must govern over rigid criteria.'"

Washington v. Commonwealth, 29 Va. App. 5, 15, 509 S.E.2d 512, 517 (1999) (*en banc*) (quoting

United States v. Sharpe, 470 U.S. 675, 685 (1985)).

Here, the circumstances surrounding the initial stop of Archie were reasonable for an

investigation into a recently reported armed bank robbery.  Fearing Archie was armed and

dangerous — as well as on the run — the officers faced a "swiftly developing situation," Sharpe,

470 U.S. at 686, exactly the kind the Fourth Amendment places outside the reach of "unrealistic

second-guessing" by courts, United States v. Montoya de Hernandez, 473 U.S. 531, 542 (1985)

(quoting Sharpe, 470 U.S. at 686).  Given the unique circumstances of this case, the officers had

---

[4] See also United States v. Hamlin, 319 F.3d 666, 671-72 (4th Cir. 2003); Foote v.
Dunagan, 33 F.3d 445, 449 (4th Cir. 1994); United States v. Sinclair, 983 F.2d 598, 602-03 (4th
Cir. 1993).

ample reason to restrain Archie in the manner they did during the investigatory stop.[5] Because the

trial court did not err in coming to this sensible conclusion, we affirm.

Affirmed.

---

[5] The risk of violence inherent in this situation far exceeds the dangers associated with an investigation of a motorist "at the scene of a traffic accident," Dixon v. Commonwealth, 270 Va. 34, 36, 613 S.E.2d 398, 399 (2005), or a routine traffic stop designed to investigate suspected driving infractions. We also reject Archie's implicit assertion that a Terry stop crossing the line into a custodial interrogation for Miranda purposes under the Fifth Amendment *necessarily* renders the stop an illegal *de facto* arrest under the Fourth Amendment. Compare State v. Frank, 986 P.2d 1030, 1033-36 (Idaho Ct. App. 1999) (finding the detention of a handcuffed suspect in a police cruiser to be a reasonable means of ensuring officer safety that required Miranda warnings but "did not otherwise convert a valid Terry stop" into a *de facto* arrest), with Dixon, 270 Va. at 41, 613 S.E.2d at 401 (citing Frank as "in accord" with its reasoning).