COURT OF APPEALS OF VIRGINIA


Present:   Judges Kelsey, Petty and Senior Judge Bumgardner
Argued at Richmond, Virginia


ROBERT KEITH SMITH

                                                MEMORANDUM OPINION[*] BY
v.      Record No. 2498-06-2              JUDGE RUDOLPH BUMGARDNER, III
                                                      JANUARY 15, 2008
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
Daniel T. Balfour, Judge

Elliott B. Bender for appellant.

J. Robert Bryden, II, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Robert Keith Smith appeals his conviction of aggravated sexual battery, Code § 18.2-67.3.

He contends the trial court erred in admitting statements made to the police. Finding no error, we

affirm the defendant's conviction.

"[I]n considering a trial court's ruling on a suppression motion, we view the evidence in

the 'light most favorable to . . . the prevailing party below,' the Commonwealth in this instance,

and the decision of the trial judge will be disturbed only if plainly wrong." Greene v.

Commonwealth, 17 Va. App. 606, 608, 440 S.E.2d 138, 139 (1994) (quoting Commonwealth v.

Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991)).

Officer Jason Helmlinger was investigating an allegation that the defendant sexually abused

a nine-year-old child while visiting the child's family in Henrico County. The thirty-year-old

defendant lived in North Carolina with his father. He suffered from dystonia, a condition affecting

_____
   [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

the muscular and nervous systems and the ability to learn. He took medications for that condition. The defendant had completed the seventh grade but was unemployed, largely confined to a wheelchair, and spent most of his time watching television.

Officer Helmlinger telephoned the defendant at his residence. The officer had difficulty understanding the defendant and asked him to have his father return the call. When the father called back, the officer asked him and the defendant to come to Henrico County to discuss the allegations. Officer Helmlinger indicated that if they did not come, the defendant would likely be arrested. The defendant and his father met Officer Helmlinger in the lobby of the Public Safety Building. The officer advised that he wanted to talk to the defendant alone, and neither the defendant nor his father objected. The father told the officer that the defendant would understand what the officer was saying but might have difficulty expressing himself. The father waited downstairs while Officer Helmlinger and another detective took the defendant to an interview room on another floor.

Officer Helmlinger told defendant that he was not under arrest and that he was free to leave at any time. He read the defendant his Miranda rights, and the defendant stated that he understood his rights. The defendant made no complaint of discomfort, hunger, or thirst.

The defendant appeared to understand the questions and responded coherently and appropriately. He initially denied any knowledge of the allegations. However, when specifically asked about three separate incidents, the defendant gave his version of what had happened on each occasion. The officer concluded the interview and took the defendant back downstairs to his father. The interview had lasted about thirty minutes. The defendant and his father returned to North Carolina. He was not arrested for several weeks.

The defendant argues his statements were inadmissible because he did not voluntarily and intelligently waive his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966), and agree to

speak to the police. "However, 'police officers are not required to administer <u>Miranda</u> warnings to everyone whom they question,' and <u>Miranda</u> warnings are not required when the interviewee's freedom has not been so restricted as to render him or her 'in custody.'" <u>Harris v. Commonwealth</u>, 27 Va. App. 554, 564, 500 S.E.2d 257, 261-62 (1998) (quoting <u>Oregon v. Mathiason</u>, 429 U.S. 492, 495 (1977)).

The defendant and his father came to Henrico County at Officer Helmlinger's request. The fact that the officer wanted to speak to the defendant at the police headquarters did not "automatically convert the meeting into a custodial situation," as "'[i]t is the custodial nature *rather than the location of the interrogation* that triggers the necessity for giving <u>Miranda</u> warnings.'" <u>Aldridge v. Commonwealth</u>, 44 Va. App. 618, 643, 606 S.E.2d 539, 551 (2004) (quoting <u>Coleman v. Commonwealth</u>, 226 Va. 31, 47, 307 S.E.2d 864, 872 (1983)).

The police did not arrest defendant when he arrived and, in fact, informed him that he was free to leave. The police did not restrain defendant or deny him any physical comfort. The interview lasted about thirty minutes, and upon its conclusion, the defendant returned to North Carolina with his father.

"Because the determination whether a suspect is 'in custody' requires an objective focus, the only relevant inquiry is how a reasonable person in the suspect's situation would have understood his circumstances." <u>Dixon v. Commonwealth</u>, 270 Va. 34, 40, 613 S.E.2d 398, 401 (2005). Under these facts and circumstances, a reasonable person in the defendant's position would not have understood that he was in custody during the interview.

Even though the defendant was not in custody, the police out of an abundance of caution read him the <u>Miranda</u> rights. The defendant then waived his rights and agreed to talk with the officer. Nothing suggests that the waiver was other than knowingly and voluntarily made.

The defendant maintains his statements were not voluntary. The defendant stresses the testimony of a psychiatrist and argues that testimony shows the defendant was especially susceptible to police overreaching. However, he is not able to identify any coercive police activity.[1] The United States Supreme Court's decision in Colorado v. Connelly, 479 U.S. 157 (1986), controls this argument. In Connelly, the Court held that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." Id. at 167.

The defendant was thirty years old, and although disabled with dystonia, the condition did not affect his ability to understand what was happening around him. Neither the defendant nor his father objected to the police interviewing the defendant in private. The officer advised defendant that he was not under arrest and that he could refuse to speak to the police. The defendant said he understood. During the interview, the defendant appeared to understand the questions and responded appropriately. The police did not mistreat defendant in any way, and when the thirty-minute interview ended, the defendant returned with his father to North Carolina. The record contains no evidence of coercive police activity.

> The mental condition of the defendant is "surely relevant to [his] susceptibility to police coercion"; however, evidence of coercive police activity "is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." The amount of coercion necessary to trigger the due process clause may be lower if the defendant's ability to withstand the coercion is reduced by intoxication, drugs, or pain, but *some* level of coercive police activity must occur before a statement or confession can be said to be involuntary.

Commonwealth v. Peterson, 15 Va. App. 486, 488, 424 S.E.2d 722, 723 (1992) (quoting Connelly, 479 U.S. at 165, 167).

---

[1] The trial court did admit the psychiatrist's testimony on the issue of the weight to be given to the defendant's statements.

The defendant was not in custody, and the police activity was not coercive. The trial court properly denied the motion to suppress. Accordingly, we affirm.

<u>Affirmed.</u>