COURT OF APPEALS OF VIRGINIA


Present:   Judges Kelsey, Petty and Senior Judge Bumgardner
Argued at Richmond, Virginia


PAYTON RANDOLPH ANDERSON, III
                                                        MEMORANDUM OPINION[*] BY
v.       Record No. 0163-07-2                           JUDGE WILLIAM G. PETTY
                                                           JANUARY 15, 2008
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                              Cleo E. Powell, Judge

          G. Russell Stone, Jr. (Cary B. Bowen; Bowen, Champlin, Carr,
          Foreman & Rockecharlie, on brief), for appellant.

          Gregory W. Franklin, Assistant Attorney General (Robert F.
          McDonnell, Attorney General, on brief), for appellee.


       Payton Randolph Anderson, III appeals his convictions of possession of marijuana with

intent to distribute in violation of Code § 18.2-248.1(a)(2) and possession of a concealed firearm

in violation of Code § 18.2-308.[1]  He asserts that the trial court erred by denying his motion to

suppress statements he made to police while he was seized during a traffic stop.  For the reasons

that follow, we disagree with Anderson and affirm his convictions.

                                    I.  BACKGROUND

       Under familiar principles of appellate review, we examine the evidence in the light most

favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible

therefrom.  See Juares v. Commonwealth, 26 Va. App. 154, 156, 493 S.E.2d 677, 678 (1997).

_____

       [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.  Moreover,
as this opinion has no precedential value, we recite only those facts necessary to our holding.

       [1] At trial, the trial court granted Anderson's renewed motion to strike the evidence
pertaining to a charge for buying or receiving a stolen firearm.

"In so doing, we must discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." Watkins v. Commonwealth, 26 Va. App. 335, 348, 494 S.E.2d 859, 866 (1998).

Chesterfield County Police Officer T.P. Kline was on patrol at 10:30 p.m., on January 1, 2006, and initiated a traffic stop of a car being driven by Anderson. Anderson had two passengers riding with him: a front seat passenger, Underwood, and a left backseat passenger, Harris.

Officer Kline requested Anderson's driver's license and registration. When Anderson opened the center console to obtain the requested information, Officer Kline saw "a baggy [sic] containing a green leaf-like substance, which [he] believed to be marijuana . . . ." Officer Kline also recalled "the vehicle had a strong odor of marijuana." He asked Anderson to step out of his car and remain by the door while he checked his license and registration. After determining that both were valid, Officer Kline returned to Anderson, who still remained outside of his vehicle, and asked him if there was any marijuana in the vehicle. Anderson replied, "yes, there [is] a little."

Officer Kline then handcuffed Anderson but allowed him to have his hands in front of him. Officer Kline testified that he handcuffed Anderson because he was "by himself" and Anderson was a "large person." When handcuffing Anderson, Officer Kline informed him that he was not under arrest and explained that he was being handcuffed for the officer's "safety." Officer Kline then directed Anderson to stand by the rear passenger side of the officer's car, while he spoke to the two passengers, who remained in Anderson's car. Anderson was not free to leave and was directed to remain in Officer Kline's view until he returned.

Officer Kline then asked Underwood to step out of Anderson's vehicle to answer some questions and to submit to a search for marijuana. During his search of Underwood, Officer Kline discovered marijuana and a firearm. He arrested Underwood, handcuffed him with his hands

behind his back, and directed him to stand in front of his car. An officer, who had recently arrived at the scene, was asked to stand with Underwood while Officer Kline searched Harris, the backseat passenger.

When Officer Kline removed Harris and searched him, he discovered marijuana. Officer Kline arrested Harris, handcuffed him with his hands behind his back, and directed him to stand in front of his car, beside Underwood. At this point, Officer Kline returned to the driver's side of Anderson's car and began to search the front part of it, including the console. There, he discovered a plastic bag inside the closed console containing what appeared to be marijuana and a digital scale underneath the plastic bag. He placed the items on the hood of his car and continued his search of the car. He then searched the area directly behind the driver's seat on the floorboard and discovered "fifteen individually wrapped baggies" of marijuana placed inside a larger clear plastic bag.

After discovering the marijuana and the scales in the console, Officer Kline showed them to Anderson and asked him if they were his. He admitted that they were. Then, Officer Kline returned with the "fifteen individually wrapped baggies" of marijuana and showed them to Anderson, and he admitted that the drugs belonged to him. At this point, Officer Kline arrested Anderson and simultaneously read Miranda rights to the three men.

Prior to trial, Anderson filed a motion to suppress any statements he made to Officer Kline during the course of the traffic stop, alleging the officer failed to advise him of his Miranda rights. The trial court held a hearing and denied the motion. Thereafter, Anderson immediately proceeded to arraignment and a bench trial where he was convicted of possession of marijuana with intent to distribute and possession of a concealed firearm.

This appeal ensued.

II. ANALYSIS

On appeal of the denial of a motion to suppress, it is appellant's burden to show that the denial constituted reversible error when the evidence is considered in the light most favorable to the Commonwealth. See McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (*en banc*). "The issue whether a suspect is 'in custody,' and therefore entitled to Miranda warnings, presents a mixed question of law and fact . . . ." Thompson v. Keohane, 516 U.S. 99, 102 (1995). "We are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them," McGee, 25 Va. App. at 198, 487 S.E.2d at 261, but we review *de novo* the trial court's application of defined legal standards to the particular facts of the case. See Ornelas v. United States, 517 U.S. 690, 699 (1996).

Anderson contends that the trial court erred in denying the motion to suppress his statement about the marijuana. He argues that the statement should have been suppressed because law enforcement failed to give him Miranda warnings before asking him questions concerning whether the marijuana belonged to him. Conversely, the Commonwealth contends that law enforcement was not required to advise Anderson of his Miranda rights because Anderson was detained incident to a traffic stop and was not in custody for purposes of Miranda when he answered questions. See Berkemer v. McCarty, 468 U.S. 420 (1984). We agree with the Commonwealth and affirm.

Even though "Miranda warnings are required whenever a suspect is subject to 'custodial interrogation,'" not every detention "constitutes a custodial interrogation for purposes of Miranda." Cherry v. Commonwealth, 14 Va. App. 135, 140, 415 S.E.2d 242, 244 (1992) (quoting Miranda v. Arizona, 384 U.S. 436, 444 (1966)); see also Harris v. Commonwealth, 27 Va. App. 554, 564, 500 S.E.2d 257, 261-62 (1998) ("'[P]olice officers are not required to administer Miranda warnings to everyone whom they question,' and Miranda warnings are not

required when the interviewee's freedom has not been so restricted as to render him or her 'in custody.'" (quoting Oregon v. Mathiason, 429 U.S. 492, 495 (1977))).

"The 'custody' that implicates the Miranda rule is conceptually distinct from a seizure implicating the Fourth Amendment. . . . Even though a routine traffic stop does not amount to a custodial detention of the motorist, it does constitute a 'seizure' within the meaning of the Fourth Amendment." United States v. Sullivan, 138 F.3d 126, 131 (4th Cir. 1998). Typically, a traffic stop is more analogous to a "'Terry stop' than to a formal arrest." Berkemer, 468 U.S. at 439. A suspect is "'in custody' for purposes of Miranda [only] if [he] has been arrested or if his freedom of action has been curtailed to a degree associated with arrest." Sullivan, 138 F.3d at 130.

During Terry stops, law enforcement officers are permitted to use methods of restraint that are reasonable under the circumstances. See Thomas v. Commonwealth, 16 Va. App. 851, 857, 434 S.E.2d 319, 323 (1993), aff'd en banc, 18 Va. App. 454, 444 S.E.2d 275 (1994). Accordingly, "drawing weapons, handcuffing a suspect, placing a suspect in a patrol car for questioning, or using or threatening to use force does not necessarily elevate a lawful stop into a custodial arrest for Miranda purposes." United States v. Leshuk, 65 F.3d 1105, 1109-10 (4th Cir. 1995) (citations omitted); cf. Dixon v. Commonwealth, 270 Va. 34, 41, 613 S.E.2d 398, 401 (2005) (holding, although the existence of being restrained in handcuffs or being locked in a police patrol car, without the other, "may not result in a curtailment of freedom ordinarily associated with a formal arrest," when both factors are present, it "compels the conclusion that a reasonable person subjected to both restraints would conclude that he was in police custody").

In determining whether a suspect is "in custody" under Miranda, courts examine the circumstances of each case, and "the ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with formal arrest." California v. Beheler, 463 U.S. 1121, 1125 (1983) (citation omitted). The determination "depends on the

objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." Stansbury v. California, 511 U.S. 318, 323 (1994). Therefore, if a reasonable person in the suspect's position would have understood that he was under arrest, then the police are required to provide Miranda warnings before questioning. See Cherry, 14 Va. App. at 140, 415 S.E.2d at 244-45.

In determining whether a suspect is in custody when questioned, "the totality of circumstances must be considered." Wass v. Commonwealth, 5 Va. App. 27, 32, 359 S.E.2d 836, 839 (1987). Among the circumstances to be considered when determining whether a suspect was in custody are (1) the manner in which the individual is summoned by the police, (2) the familiarity or neutrality of the surroundings, (3) the number of officers present, (4) the degree of physical restraint, (5) the duration and character of the interrogation, and (6) the extent to which the officers' beliefs concerning the potential culpability of the individual being questioned were manifested to the individual. See Harris, 27 Va. App. at 565, 500 S.E.2d at 262 (citing Bosworth v. Commonwealth, 7 Va. App. 567, 572, 375 S.E.2d 756, 759 (1989)). No single factor, by itself, however, is dispositive of the issue of whether a suspect was in custody for purposes of Miranda. See Wass, 5 Va. App. at 33, 359 S.E.2d at 839.

In the case before us, the detention lasted just long enough for Officer Kline to investigate and search the car and its occupants after smelling marijuana and viewing what appeared to be marijuana in a baggie in the open console. During the course of the investigation, Officer Kline explained to Anderson that he was not under arrest and that he was being handcuffed for Officer Kline's safety. Furthermore, Officer Kline did not place Anderson inside his police car but allowed him to stand outside next to the car. Cf. Dixon, 270 Va. at 41, 613 S.E.2d at 401 (determining that a suspect handcuffed and locked in a police car was in custody for Miranda purposes; however, explaining that "the presence of either of th[o]se factors, in the

absence of the other, may not result in a curtailment of freedom ordinarily associated with a formal arrest").

Anderson concedes that the use of handcuffs alone was not sufficient to trigger the necessity for providing <u>Miranda</u> warnings. Nonetheless, he contends that when combined, the two factors of (1) being handcuffed; and (2) viewing the arrests of Underwood and Harris, rendered him in custody for purposes of <u>Miranda</u>.

At oral argument, Anderson conceded, however, that the record is devoid of any proof that Anderson had actual knowledge that Underwood and Harris were actually arrested or treated differently than he was when they were handcuffed in the back, as opposed to the front. Instead, Anderson submits that we should "infer" from the record that a reasonable person would know the difference under these circumstances. We disagree. Moreover, based upon the record before us, we find that no such evidence exists to establish factor number two submitted by Anderson.

Anderson was neither formally arrested nor deprived of his freedom of movement to the degree associated with a formal arrest until he admitted ownership of the individual marijuana baggies and the scale. Thus, Officer Kline was not required to advise him of his <u>Miranda</u> rights because he was not yet in custody. <u>Dixon</u>, 270 Va. at 41, 613 S.E.2d at 401.

Accordingly, the trial court did not err in denying Anderson's motion to suppress his statements.

### III. CONCLUSION

For these reasons, we affirm Anderson's convictions.

<u>Affirmed.</u>