COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Fulton and Ortiz

MATTHEW TERRELL WHITNEY

v.     Record No. 1408-22-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*]
PER CURIAM
FEBRUARY 20, 2024

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Leslie L. Lilley, Judge[1]

(Josue M. Casanova, on briefs), for appellant.

(Jason S. Miyares, Attorney General; Matthew J. Beyrau, Assistant
Attorney General, on brief), for appellee.

Following his conditional guilty pleas, the Circuit Court of the City of Virginia Beach

convicted Matthew Terrell Whitney of 4 counts of carnal knowledge of a child between 13 and 15

years of age and 4 counts of indecent liberties with a child under the age of 15. The trial court

sentenced Whitney to a total of 50 years' imprisonment with 25 years suspended. On appeal,

Whitney challenges the trial court's order denying his motion to suppress inculpatory statements

he made a to a detective. He next argues that the trial court erred in imposing a sentence above

the sentencing guidelines range. Finally, he asserts that the trial court should have granted his

motion at the sentencing hearing to discharge his appointed counsel and appoint a new attorney

to represent him. After examining the briefs and record in this case, the panel unanimously holds

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] The Honorable H. Thomas Padrick, Jr., denied Whitney's motion to suppress. The
Honorable Leslie L. Lilley presided over the trial.

that oral argument is unnecessary because "the appeal is wholly without merit." Code § 17.1-403(ii)(a); Rule 5A:27(a). For the following reasons, we affirm.

## BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires that we "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

A grand jury indicted Whitney for 4 counts of carnal knowledge of a child between 13 and 15 years of age and 4 counts of indecent liberties with a child under the age of 15. Whitney filed a pretrial motion to suppress statements he made to Virginia Beach Detective Brian Slomeana. At the suppression hearing, Detective Slomeana testified that he called Whitney on the afternoon of January 12, 2021, and informed Whitney that there was "something" the detective "want[ed] to talk to" Whitney about and asked if they "could speak in person." Whitney agreed and arrived at the police station "[w]ithin the hour."

Detective Slomeana interviewed Whitney in a room in the detective's bureau. The interview was video-recorded, and the trial court admitted two video clips into evidence. Detective Slomeana wore a polo shirt and a jacket that covered his badge and gun. He did not handcuff Whitney. After Whitney and Detective Slomeana entered the interview room, furnished with two chairs and a table, Detective Slomeana directed Whitney to sit in the chair farther from the door. Detective Slomeana stated that he was closing the door for privacy, but that the door was unlocked, and that Whitney was "there on [his] own free will" and could "leave on [his] own will." When

Detective Slomeana left the room for approximately five seconds to retrieve a pen, he left the door open.

Detective Slomeana did not give Whitney *Miranda*[2] warnings at the start of the interview. Detective Slomeana then spoke to Whitney "for about an hour" before arresting him. After Detective Slomeana arrested Whitney, he administered *Miranda* warnings. Detective Slomeana and Whitney then "continued to talk about the issue with" the victim, H.W. After Detective Slomeana "began to press" Whitney "for more information," Whitney invoked his right to remain silent and ended the interview.

Whitney argued that the trial court should suppress his statements because they were the product of custodial interrogation and Detective Slomeana failed to administer *Miranda* warnings at the outset of the interview. The Commonwealth countered that because Whitney was not in custody when he made those statements, Detective Slomeana was not required to administer *Miranda* warnings. The trial court denied the motion to suppress, finding that Whitney voluntarily drove to the police station and that it was "clear" that Whitney "wasn't coerced." Detective Slomeana also told Whitney that he was free to leave. Further, the trial court found that the conversation was "normal" and Whitney was "relaxed."

On May 25, 2022, Whitney entered a conditional plea agreement agreeing to plead guilty to 4 counts of carnal knowledge of a child between 13 and 15 years of age and 4 counts of taking indecent liberties with a child under the age of 15. The parties agreed to "argue the appropriate sentence to the" trial court.

During his plea colloquy, Whitney stated that he had discussed the charges against him and possible defenses with his attorney and understood what the Commonwealth must prove to convict him. Whitney decided for himself "that [he] wanted to plead guilty" and confirmed that no one had

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

made any threats or promises to induce his pleas. He understood that by pleading guilty, he would waive important constitutional rights, including the right to a jury trial, the right against self-incrimination, the right to confront and cross-examine his accusers, and the right to present a defense. Whitney stated that he knew the maximum punishment for each offense and that the trial court was "not obligated to follow [the] sentencing guidelines and c[ould] sentence [him] to the maximum penalty provided by law." Whitney averred that he was "entirely satisfied with the services of" his attorney and did not have any questions for the trial court or his attorney.

The trial court accepted Whitney's pleas, finding that he entered them freely, voluntarily, and intelligently. The parties stipulated that on January 10, 2021, Laneice Abdel-Shakur "learned that her 14-year-old daughter, H.W., was having sexual relations with [Abdel-Shakur's] 53-year-old boyfriend," Whitney. H.W. told Detective Slomeana that "for the better part of the last few months," Whitney "had been penetrating her vagina with his finger and penis, and she performed oral sex on him." Whitney also anally sodomized H.W., and on multiple occasions she rubbed his exposed penis. Whitney admitted to Detective Slomeana that he had touched H.W.'s vagina and penetrated her vagina with his penis. Whitney stated that H.W. "definitely . . . [came] onto" him.

Before presenting evidence for sentencing, Whitney's counsel informed the trial court that Whitney "intend[ed] to ask" the trial court to discharge counsel and appoint a new attorney to represent him. Trial counsel stated that, two weeks earlier, Whitney wrote a *pro se* letter to the trial court alleging that counsel had "been untruthful with him about his case" and stating that he did not have "confidence" or "trust" in counsel's representation of him. Counsel met with Whitney for "several hours" the previous day but stated that he and Whitney were "in a worse place" after the meeting and that "[t]hose issues remain[ed]."

Whitney told the trial court that the conditional plea agreement had "stalled the thought of having a motion to suppress." Trial counsel clarified that Whitney wanted "reconsideration of the

- 4 -

motion to suppress," but counsel had informed Whitney that there was no basis to seek reconsideration. The trial court denied Whitney's motion to appoint new counsel.[3] It explained that Whitney was not entitled "to a second suppression hearing on the same issues" and that it saw no basis to appoint new counsel. Further, the trial court noted that it had read Whitney's letter and found it "specious at best and speculative."[4] The trial court asked Whitney if he "ha[d] anything else"; Whitney raised no other concerns.

At Whitney's sentencing hearing, United States Probation Officer Lance Hall testified that in 2015, the United States Army had convicted Whitney of offenses "involving child pornography and illegal touching of a juvenile." Whitney was released in July 2019 after serving a six-year sentence. He was required to register as a sex offender, and his conditions of release prohibited him from residing with minors or having unsupervised contact with minors "without the consent and approval of his treatment provider and his supervising U.S. probation officer." Officer Hall did not learn of Whitney's interactions with H.W. until after his arrest in this case. At the time of his arrest, Whitney was receiving sex offender treatment.

Abdel-Shakur testified that H.W. experienced developmental delays caused by a childhood brain injury. When Abdel-Shakur met Whitney, she did not know that he was a sex offender. Whitney told her that his first name was Terrell and that he was 49 years old, which was not his true age. One day her son called to tell her that Whitney was at her residence while she was gone, which she did not allow. When Abdel-Shakur asked H.W. about her "relationship" with Whitney, H.W. stated that she was Whitney's "girlfriend."

---

[3] The trial court also noted that Whitney had previously requested and received new counsel.

[4] Whitney's letter is not in the record. The trial court stated that the letter suggested that "there [wa]s some wrongdoing on the Commonwealth's part and shifting judges." The trial court concluded that there was "no evidence that there has been judge shopping" in Whitney's case.

Whitney asked the trial court to impose a sentence within the range provided by the discretionary sentencing guidelines.[5] Defense counsel noted that Whitney had been a victim of sexual abuse as a child. Further, the psychosexual report concluded that Whitney presented an average risk of reoffending and indicated that completion of a sex offender treatment program was a "protective factor." Whitney contended that much of the Commonwealth's sentencing "concerns," including the circumstances of the offense, his criminal history, and the emotional injuries to the victim, were already addressed by the discretionary sentencing guidelines. He also noted that, by entering a conditional guilty plea, he prevented H.W. from having to testify.

The Commonwealth countered that Whitney was a "predator" who sought out a vulnerable victim. He lied to Abdel-Shakur to conceal his sex offender status and violated the terms of his federal supervision by having unsupervised contact with H.W. The Commonwealth challenged the conclusion in the psychosexual report that Whitney presented an average risk of reoffending, noting that his child pornography conviction involved 2,300 images and that Whitney "rationaliz[ed]" his conduct by claiming that H.W. "came onto him." The Commonwealth asked for a "sentence for decades" to protect the public.

When pronouncing sentence, the trial court described Whitney's crimes as "horrific," and indicated that it was "staggering" that Whitney "w[as] on probation for previous sex crimes, instructed not to be near a child," and "broke those rules while [he was] under supervision and a suspended sentence from the Federal Government" by seeking out "a child who was developmentally challenged." The trial court imposed a total sentence of 50 years' incarceration with 25 years suspended. Whitney now appeals, challenging the trial court's order denying his motion to suppress, his sentence, and the trial court's order denying his motion for new counsel.

---

[5] Whitney's discretionary sentencing guidelines called for a range between 3 years and 4 months and 10 years and 5 months, with a midpoint sentence of 8 years and 3 months.

ANALYSIS

I. Motion to Suppress

"On appeal of the denial of a motion to suppress, we view the evidence in the light most favorable to the Commonwealth." *Joyce v. Commonwealth*, 72 Va. App. 9, 13 (2020) (quoting *Carlson v. Commonwealth*, 69 Va. App. 749, 757 (2019)). "Whether the circumstances of [a police interview] were such as to require *Miranda* warnings is a mixed question of law and fact." *Keepers v. Commonwealth*, 72 Va. App. 17, 33 (2020) (alteration in original) (quoting *Spinner v. Commonwealth*, 297 Va. 384, 392 (2019)). "Appellate courts 'review such questions *de novo* but defer to the fact-finder's findings of historical fact unless they are plainly wrong or without evidence to support them.'" *Id.* (quoting *Spinner*, 297 Va. at 392).

The United States Supreme Court has held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination" guaranteed by the Fifth Amendment. *Hasan v. Commonwealth*, 276 Va. 674, 679 (2008) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). "The safeguards required by *Miranda* must be afforded to a suspect as soon as the police have restricted his freedom of action to a 'degree associated with formal arrest.'" *Id.* (quoting *Dixon v. Commonwealth*, 270 Va. 34, 39 (2005)). But this requirement "does not extend to non-custodial interrogations; the suspect must be 'both in custody and subjected to interrogation' before police must provide *Miranda* warnings." *Alvarez Saucedo v. Commonwealth*, 71 Va. App. 31, 41 (2019) (quoting *Watts v. Commonwealth*, 38 Va. App. 206, 214 (2002)).

"The ultimate inquiry into whether an individual is subject to custodial interrogation is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with formal arrest." *Keepers*, 72 Va. App. at 34 (quoting *Spinner*, 297 Va. at 392).

To make this determination, we must examine "how a reasonable person in the suspect's situation would have understood his circumstances." *Id.* (quoting *Alvarez Saucedo*, 71 Va. App. at 41). Relevant factors "include whether the police used physical restraints, displayed their weapons, engaged in physical contact, or told the suspect he was free to leave." *Id.*

We consider "[t]he number of officers present and whether the police 'engaged in other incidents of formal arrest such as booking.'" *Id.* (quoting *Alvarez Saucedo*, 71 Va. App. at 41). Also of relevance are the length and nature of the questioning and the "nature of the surroundings." *Alvarez Saucedo*, 71 Va. App. at 41. Additionally, we "may consider 'the extent to which the officers' beliefs concerning the potential culpability of the individual being questioned were manifested to the individual.'" *Keepers*, 72 Va. App. at 35 (quoting *Harris v. Commonwealth*, 27 Va. App. 554, 565 (1998)). "No single factor is dispositive of this issue." *Id.* (quoting *Aldridge v. Commonwealth*, 44 Va. App. 618, 642 (2004)). Rather, we look to the totality of the circumstances. *Wass v. Commonwealth*, 5 Va. App. 27, 32 (1987).

We conclude that the trial court did not err in finding, under the totality of the circumstances, that Whitney was not in custody when he made the challenged statements to Detective Slomeana. It is well-established that the fact that questioning occurs at the police station does not automatically require *Miranda* warnings. *See Bailey v. Commonwealth*, 259 Va. 723, 745-46 (2000). Whitney drove from Portsmouth to the Virginia Beach police station and did so in an expeditious manner. He contends that his actions show his reasonable belief that he was "under obligation to do so." The trial court found, however, that Whitney "voluntarily drove to the detective bureau" to speak with Detective Slomeana. That finding is not clearly erroneous and weighs against a determination that Whitney was in custody.

The record shows that Detective Slomeana, the only officer present during the interrogation, did not physically restrain Whitney, did not make physical contact with him, and

- 8 -

did not draw his firearm. Whitney further contends that although Detective Slomeana did not handcuff him, he restrained Whitney by interviewing him in a small room, closing the door, and directing him to sit in a particular chair. But Detective Slomeana expressly told Whitney that the door was not locked and that he was "there on his own free will" and could "leave on his own free will." Additionally, after viewing the video clips, the trial court found that the conversation between Whitney and Detective Slomeana was "normal," that Whitney was "relaxed" and "not coerced," and that at one point, Detective Slomeana left Whitney in the room with the door open. We again find no basis in the record to disturb these findings. Although Detective Slomeana and Whitney spoke for approximately an hour, the relaxed nature of the conversation mitigates against length as an indication of a degree of coercion commensurate with formal arrest. Further, the trial court noted that Detective Slomeana did tell Whitney that he "d[id]n't believe" him, but nevertheless determined "that it was a voluntary statement."

In sum, under the totality of circumstances, the trial court did not err in finding that the challenged statements made to Detective Slomeana were voluntary and did not require *Miranda* warnings. Accordingly, the trial court properly denied the motion to suppress.

## II. Sentence

Whitney next argues that the trial court "erred by imposing a sentence that exceeded the sentencing guidelines and that was excessive and disproportionate to the circumstances." We disagree.

"We review the trial court's sentence for abuse of discretion." *Scott v. Commonwealth*, 58 Va. App. 35, 46 (2011). "[W]hen a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)).

To the extent Whitney assigns error to the punishment "exceeding the sentencing guidelines," we note that "[t]he sentencing guidelines are advisory only and do not require trial courts to impose specific sentences." *Runyon v. Commonwealth*, 29 Va. App. 573, 577-78 (1999). "[T]he recommended sentencing ranges contained in these discretionary guidelines are not binding on the trial judge but, rather, are mere tools to be used by the judge in fixing an appropriate sentence within the limitations established by the statute governing punishment for the particular crime." *Luttrell v. Commonwealth*, 42 Va. App. 461, 465 (2004). A judge's failure to follow the sentencing guidelines "shall not be reviewable on appeal or the basis of any other post-conviction relief." Code § 19.2-298.01(F).

This Court may only consider whether the sentence fell outside the permissible statutory ranges. *See Smith v. Commonwealth*, 26 Va. App. 620, 626 (1998); *Valentine v. Commonwealth*, 18 Va. App. 334, 339 (1994). The sentence that the trial court imposed for Whitney's convictions on 4 counts of carnal knowledge of a child between 13 and 15 years of age and 4 counts of indecent liberties with a child under the age of 15 was within the statutory ranges set by the General Assembly. *See* Code §§ 18.2-10, -63(A), -370(A)(1). Accordingly, the trial court did not abuse its discretion in sentencing Whitney to 25 years' active incarceration.

Whitney also contends that "[t]he trial court failed to consider several significant" mitigating factors; namely, his "victimization as a child and rehabilitative potential as demonstrated in the psychosexual and presentence reports." We disagree. It was within the trial court's purview to weigh any mitigating factors Whitney presented. *Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000). Moreover, "[b]arring clear evidence to the contrary, this Court will not presume that a trial court purposefully ignored mitigating factors in blind pursuit of a harsh sentence." *Bassett v. Commonwealth*, 13 Va. App. 580, 584 (1992).

The record shows that the trial court considered Whitney's mitigation evidence. The trial court reviewed the presentence and psychosexual reports, received evidence that Whitney had taken affirmative steps to seek mental health treatment, and heard Whitney's argument for a sentence within the guidelines. The trial court also heard the Commonwealth's argument for a longer sentence, including that Whitney was a "predator" who sought out a vulnerable victim and that the psychosexual report significantly understated his risk of reoffending. That the trial court rejected Whitney's request for a sentence within the guidelines does not mean that it failed to consider his mitigation; the record shows that the trial court properly considered and rejected Whitney's mitigation evidence.

Finally, this Court declines to engage in a proportionality review in cases that do not involve life sentences without the possibility of parole. *Cole v. Commonwealth*, 58 Va. App. 642, 653-54 (2011). We noted in *Cole* that the Supreme Court of the United States "has never found a non-life 'sentence for a term of years within the limits authorized by statute to be, by itself, a cruel and unusual punishment' in violation of the Eighth Amendment." *Id.* at 653 (quoting *Hutto v. Davis*, 454 U.S. 370, 372 (1982) (*per curiam*)); *Cf. Vasquez v. Commonwealth*, 291 Va. 232, 243 (2016) (rejecting Eighth Amendment challenge to 133-year active sentence because the sentence was imposed for "eighteen separate crimes"). Accordingly, we do not address this argument.

### III. Motion to Discharge Counsel

Whitney challenges the trial court's denial of his motion to appoint new counsel.[6] "Whether an indigent defendant's appointed counsel should be discharged lies within the sound discretion of the trial court." *Kinard v. Commonwealth*, 16 Va. App. 524, 526 (1993). It is

---

[6] Although Whitney's assignment of error challenges the trial court's denial of "trial counsel's motion to withdraw," the record shows that, rather than trial counsel seeking to withdraw, counsel alerted the trial court to Whitney's request to change counsel. Given the arguments before the trial court and the parties' arguments on appeal, this discrepancy does not foreclose our review of this assignment of error.

- 11 -

well-established that the Sixth Amendment right to the assistance of counsel "entitles indigent criminal defendants to court appointed counsel in felony cases." *Brown v. Commonwealth*, 288 Va. 439, 442 (2014). Although a defendant who can afford to hire counsel has a constitutional right to choose his attorney, "the right to choice of counsel 'does not extend to defendants who require [court appointed] counsel.'" *Id.* (alteration in original) (quoting *United States v. Gonzales-Lopez*, 548 U.S. 140, 151 (2006)).

We have held that "[a]n indigent defendant cannot have his original attorney replaced unless he shows good cause." *Kinard*, 16 Va. App. at 526. We explained in *Kinard* that a defendant's dissatisfaction with and failure to cooperate with counsel did not constitute good cause. *Id.* Whitney argues that the trial court failed to "give proper weight to the communication required between attorney and client to provide a proper defense" and that trial counsel had "communicat[ed] to the trial court that he was not in the position to give [Whitney] an adequate defense." We disagree. Although trial counsel stated that Whitney lacked confidence and trust in counsel, counsel did not represent that those issues prevented him from adequately representing Whitney.[7] Moreover, the trial court heard evidence that Whitney's discontent arose from counsel's refusal to seek reconsideration of the motion to suppress. The trial court inquired about the basis for reconsideration and, finding none, explained to Whitney that he was "not entitled to a second suppression hearing on the same issues." The trial court concluded that counsel's refusal to move for reconsideration, absent a colorable basis to do so, was not good cause for Whitney to seek a different appointed attorney. We find no abuse of discretion in that decision.

---

[7] Further, we note that Whitney does not allege that trial counsel's representation was deficient or that he suffered any prejudice.

Whitney further asserts that the trial court abused its discretion by improperly considering his *pro se* letter.  Again, we disagree.  The record does not show that the trial court denied Whitney's motion based on the letter.  Rather, the record indicates that the trial court heard from defense counsel and from Whitney that the conflict arose from Whitney's desire for a motion to reconsider.  The trial court further paused to read Whitney's letter and, after it had done so, asked whether "there [was] anything else [Whitney] want[ed] to add" to his argument.  Whitney declined and did not raise any additional concerns with trial counsel's performance when given the opportunity to do so.  The trial court directly addressed the source of the conflict between Whitney and trial counsel and explained why that conflict did not entitle Whitney to new appointed counsel.  Thus, the trial court properly denied the motion.

CONCLUSION

Accordingly, we affirm the trial court's judgment.

*Affirmed.*