PUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Russell and AtLee
Argued at Fredericksburg, Virginia

CLAYTON GEORGE SMITH

v.     Record No. 0427-14-4

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE ROBERT J. HUMPHREYS
OCTOBER 13, 2015

FROM THE CIRCUIT COURT OF STAFFORD COUNTY
Charles S. Sharp, Judge

Andrew J. Cornick (Spencer, Mayoras, Koch, Cornick & Meyer,
PLC, on brief), for appellant.

Robert H. Anderson, III, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

Clayton George Smith ("Smith") appeals the rulings of the Circuit Court of Stafford

County (the "trial court") 1) denying his motion to suppress the statements given during an

encounter with a detective and 2) denying his motion to withdraw his guilty plea to driving while

his license was suspended. Specifically, Smith argues that his statements to the detective were

the unconstitutional product of a custodial interrogation where no Miranda warning was given as

required by Miranda v. Arizona, 384 U.S. 436 (1966). Additionally, Smith claims the trial court

failed to consider his mistake in pleading guilty to the driving while license suspended charge

and his proffered alibi defense in denying his motion to withdraw his guilty plea.

I. BACKGROUND

On January 29, 2013, Shemeka Williams ("Williams") was in her apartment in Stafford

County with her boyfriend Warren Jackson ("Jackson") and Jeffrey Hylton ("Hylton") when

three armed men kicked in the front door to the apartment at approximately 10:40 p.m. Jackson

was robbed of $350 to $400 from his pocket. Hylton was robbed of $500. The intruders shot Jackson twice in the buttocks and twice in the leg. They also shot Hylton four times in the leg and once in the groin before fleeing the scene. After the intruders left the apartment, Williams called 911 at 10:54 p.m.

Detective Michelle Gibbons ("Detective Gibbons") of the Stafford County Sheriff's Office recovered a surveillance tape of an adjacent office building which showed a black Nissan parked outside of Williams's residence at the time of the incident. At 10:42 p.m., three men got out of the car, which was left running, and ran back toward the car several minutes later. Detective Gibbons traced the license plate and determined the car was registered to Smith's wife and mother-in-law. The car's registration address was Smith's residence. Because investigators believed that the car shown in the surveillance footage had been involved in the home invasion, they kept surveillance on Smith's house "waiting for the vehicle to kind of come and go."

On January 30, 2013, after Smith was seen driving the vehicle, police stopped him in Prince William County. Smith was detained, handcuffed, and placed in the back of an unmarked vehicle. Detective Gibbons arrived on the scene shortly thereafter and sat in the back of the vehicle with Smith because it was "downpouring" and both Smith and Detective Gibbons were "drenched and soaking wet." Detective Gibbons told Smith he was "being detained," explained who she was and that she was conducting an investigation of an incident "that occurred the night prior in Stafford Country." Detective Gibbons "didn't know if [Smith] was going to talk with [her] or not or what his position was going to be, so [she] just asked [Smith] at that point if he would be willing to talk to [her]."

At the suppression hearing, Detective Gibbons described her interaction with Smith:

> At that point, he asked me what I wanted to talk to him about. I said, well, I want to talk to you about the whereabouts, you know, of you and your vehicle from the night prior. At that point, he then just stated to me that he had the vehicle and that the vehicle

> belonged to his wife and he had it from about 8:00 p.m. to
> 2:30 a.m. He told me at that point that he was with a girl and
> asked me not [to] tell his wife. At that point, I said, well, would
> you be willing to go to the Garfield Station, again, due to where we
> are and, you know, the circumstances of where we're sitting and
> everything, to talk to – more about this with me. At that time he
> says, well, I don't really have any more information for you and
> said, I don't want to talk to you.

At that point, Detective Gibbons did not ask Smith any additional questions and their

conversation ended.

In response to a question by the judge at the suppression hearing, Detective Gibbons

reiterated:

> I said, hey, you know, we're both soaked, we're drenched, we're
> sitting in the back of a car, this isn't the ideal kind of setting, and
> again, I said would you be willing to [go to] the Garfield Station.
> He said, well, what is it that you want to – what would you be
> asking me. And I said, well, I just want to ask you questions in
> regards to your whereabouts, where the vehicle was, and that sort
> of thing, and then he just started saying that, you know, he had the
> vehicle from 8:00 p.m. to 2:00 a.m., it was his wife's vehicle.

Detective Gibbons offered little information to Smith about the case she was investigating and

did not ask Smith "any specific questions." Detective Gibbons did not inform Smith of his

Miranda rights during their encounter.

At the suppression hearing, Smith testified that he was a twice-convicted felon and

initially did not dispute Detective Gibbons's testimony regarding their interaction once she got in

the police car. However, Smith later stated that Detective Gibbons had asked him where the

vehicle was on the night before, to which he replied that he "had the vehicle from a certain time

until the (inaudible) time. I came home." The trial court denied Smith's motion, holding:

> The format of the statements the officer made do not seem to be
> overtly designed to draw a response, but merely to acquaint the
> defendant with the subject of what might be a future interrogation.
> The only question that was asked was one of logistics. Would you
> go to a particular station with me, that is not designed to draw out

- 3 -

any incriminating testimony, it's simply designed to draw an
opinion as to where such an encounter should take place.

On the morning of trial, Smith represented to the trial court, through counsel, that he would be willing to plead guilty to the driving while license suspended, third offense charge. After conducting the proper colloquy, the trial court found Smith guilty and deferred sentencing to a later date. After a short recess that lasted a matter of minutes, and before the jury trial was to begin on the remaining charges, Smith made a motion to withdraw his guilty plea, claiming:

> [H]e pled guilty because he was driving in Prince William when
> they picked him up and, of course, he drove to his brother's place,
> and that's the substance of his alibi, but all of that is in Prince
> William County. None of the driving is in Stafford County. And
> so he was thinking more of the driving behavior as a whole and not
> the specific Stafford versus Prince William distinction.

The trial court denied the motion, holding that when questioned by the court, Smith "indicated that he understood the charge, he was advised that he stood charged with an offense which is alleged to have occurred in Stafford County." The trial court stated, "I found then and I find now that he made that plea freely, voluntarily and intelligently with the advice of counsel." Smith was then tried by a jury for common law burglary, two counts of robbery, two counts of aggravated malicious wounding, two counts of use of a firearm in the commission of a felony, and conspiracy. The jury found Smith guilty on all remaining charges.

## II. ANALYSIS

### A. Miranda Warning

Smith's first assignment of error claims the trial court erred in denying his motion to suppress his statements to Detective Gibbons by erroneously holding that although no Miranda warning was given while Smith was in custody, no interrogation had occurred.

In reviewing a trial court's denial of a motion to suppress, "we determine whether the accused has met his burden to show that the trial court's ruling, when the evidence is viewed in

the light most favorable to the Commonwealth, was reversible error." Roberts v. Commonwealth, 55 Va. App. 146, 150, 684 S.E.2d 824, 826 (2009). This Court is "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc). However, this Court reviews the trial court's application of legal standards to the particular facts of the case *de novo*. McCracken v. Commonwealth, 39 Va. App. 254, 258, 572 S.E.2d 493, 495 (2002). Specifically, in the context of potential Miranda violations, "'the determination of what [the defendant] actually said is a question of fact that we review only for clear error. . . . Whether those words are sufficient to invoke the right to counsel is a legal determination that we review *de novo*.'" Commonwealth v. Redmond, 264 Va. 321, 327, 568 S.E.2d 695, 698 (2002) (quoting United States v. Uribe-Galindo, 990 F.2d 522, 523 (10th Cir. 1993)).

Absent a Miranda waiver, any statements made by a defendant who is subjected to custodial interrogation are inadmissible. Miranda, 384 U.S. at 444. "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. Thus, the safeguards, now commonly known as "Miranda warnings" are only required when a suspect is both (1) in custody and (2) subjected to interrogation; the warnings are not required where an individual is simply in custody. Rhode Island v. Innis, 446 U.S. 291, 300 (1980).

It is undisputed that no Miranda warning was given by Detective Gibbons during her interaction with Smith in the back of the police car. Additionally, the Commonwealth conceded at the suppression hearing, and does not contest on appeal, that Smith was in custody at the time

of his interaction with Detective Gibbons. Therefore, the sole issue before this Court is whether an interrogation occurred to trigger Miranda.

The term "interrogation" means either express questioning or its functional equivalent. Jenkins v. Commonwealth, 244 Va. 445, 452-53, 423 S.E.2d 360, 365 (1992). The "functional equivalent" of an interrogation is "any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect." Innis, 446 U.S. at 301. However, volunteered statements of any kind are not barred by the Fifth Amendment and are not considered the product of an interrogation. Miranda, 384 U.S. at 478.

Jurisprudence from the United States Supreme Court, the Supreme Court of Virginia, and this Court has held no interrogation occurred under facts at least as favorable to the defendant as those in this case. In Innis, the United States Supreme Court found no interrogation occurred when two police officers began discussing the prospect of a child from the nearby handicapped school accidentally finding the weapon used in a murder while transporting the defendant to the police station. 446 U.S. at 295-96. After hearing the exchange, the defendant interrupted the conversation and told the officers to turn the car around so he could show them the location of the shotgun. Id. at 295. The Court held that the defendant was not subjected to police words or actions that the police should have known were reasonably likely to elicit an incriminating response, "[n]or does the record support the contention that, under the circumstances, the officers' comments were particularly 'evocative.'" Id. at 303.

Applying Innis, the Supreme Court of Virginia concluded that the police had not interrogated a defendant and thus, had not committed a Miranda violation in Commonwealth v. Quarles, 283 Va. 214, 720 S.E.2d 84 (2012). In Quarles, when one police officer stated to another that the defendant wished to speak to a lawyer, the second officer responded, "[t]hat's fine if he doesn't want to talk to me. I wasn't the person that robbed a white lady and hit her in

- 6 -

the head with a brick." Id. at 218, 720 S.E.2d at 86. After hearing the second officer's remark, the defendant said he wished to speak with that officer and ultimately gave a confession. Id. The Supreme Court held that the police officers' remarks were not reasonably likely to elicit an incriminating response, noting that the officers' statements "contained no implicit request for information or even a response." Id. at 222, 720 S.E.2d at 88. The Court also rejected the defendant's argument that the "use of the term 'white lady' amounted to a specific warning to Quarles that [his co-defendant] had implicated him in the robbery." Id.

This Court similarly rejected a defendant's Miranda argument in Emerson v. Commonwealth, 43 Va. App. 263, 597 S.E.2d 242 (2004). In Emerson, police placed the defendant outside while they executed a search warrant for his apartment. Because the defendant was wearing only boxer shorts, the officer asked the defendant what clothes he wanted to put on before being transported to the police station. Id. at 268, 597 S.E.2d at 245. The defendant asked for a pair of jean shorts, which were searched pursuant to department policy, to insure they did not contain weapons or drugs. Id. at 269, 597 S.E.2d at 245. The officer then asked the defendant if the shorts were the pair he asked for. Id. This Court rejected the defendant's argument that the officer's question to him regarding whether the jean shorts were the pair he wanted was the functional equivalent of an interrogation, holding that the objective observer would not perceive the officer's words and actions as being intended to elicit incriminating information from the defendant regarding the ownership of the jean shorts and their contents. Id. at 275, 597 S.E.2d at 248.

Consistent with these binding authorities, we hold that the trial court properly concluded that Detective Gibbons did not interrogate Smith in the back of the police car. The record is clear that Detective Gibbons did not initiate any line of questioning relating to her investigation of the home invasion. Instead, her only question was simply one of logistics to determine

whether Smith would be willing to talk with her at a future time and location, given the fact that they were both wet from the rain and in the back of a police car seeking temporary shelter from the weather. Specifically, Detective Gibbons stated to Smith:

> I said, hey, you know, we're both soaked, we're drenched, we're sitting in the back of a car, this isn't the ideal kind of setting, and again, I said would you be willing to [go to] the Garfield Station. He said, well, what is it that you want to – what would you be asking me. And I said, well, I just want to ask you questions in regards to your whereabouts, where the vehicle was, and that sort of thing, and then he just started saying that, you know, he had the vehicle from 8:00 p.m. to 2:00 a.m., it was his wife's vehicle.

The challenged statement by Detective Gibbons was made solely in response to Smith's question regarding his possible transportation to the police station. Similar to Quarles, which held that the mere mention of certain evidence that was suggestive of guilt is not an interrogation, the fact that Detective Gibbons told Smith that she may ask him about his whereabouts and the whereabouts of his wife's vehicle if he agreed to talk to her did not rise to the level of interrogation to trigger Smith's Miranda rights. Further, if the officers' statements in Innis were not so "evocative" to constitute interrogation, then the same conclusion must result for the case at bar considering Smith was simply asked if he would agree to speak with Detective Gibbons at a future time. Detective Gibbons's question could not be reasonably taken in context as designed to elicit any incriminating response; it was designed to determine if a future interrogation may take place at the police station. The record reflects that Smith volunteered his incriminating statement after Detective Gibbons answered *his* question regarding her reasons for asking him to accompany her to the police station. Detective Gibbons could not anticipate that Smith would volunteer the fact that he had been in possession of his wife's vehicle the night before. Considering the totality of

the evidence in the record, we find no merit in Smith's contention that his statements to Detective Gibbons were the result of an interrogation.

## B. Withdrawal of the Guilty Plea

Smith's second assignment of error asserts that the trial court abused its discretion in denying Smith's pre-sentencing motion to withdraw his guilty plea for driving while his license was suspended, third or subsequent offense, by failing to consider Smith's mistake in pleading guilty and his proffered alibi defense.

The decision whether to grant a defendant's motion to withdraw a guilty plea prior to sentencing is "within the discretion of the trial court; thus, on appeal, the inquiry is whether the circuit court abused its discretion in denying [appellant's] motion to withdraw his guilty plea." Hubbard v. Commonwealth, 60 Va. App. 200, 206, 725 S.E.2d 163, 166 (2012). "'The finding of the judge, upon the credibility of the witnesses and the weight to be given their evidence, stands on the same footing as the verdict of a jury, and unless that finding is plainly wrong, or without evidence to support it, it cannot be disturbed.'" Hoverter v. Commonwealth, 23 Va. App. 454, 465, 477 S.E.2d 771, 776 (1996) (quoting Yates v. Commonwealth, 4 Va. App. 140, 143, 355 S.E.2d 14, 16 (1987)). Indeed, reversal is appropriate only upon "clear evidence that [the decision] was not judicially sound." Coleman v. Commonwealth, 51 Va. App. 284, 289, 657 S.E.2d 164, 166 (2008).

The Supreme Court of Virginia discussed the standard for considering a pre-sentence motion to withdraw a guilty plea at length in Parris v. Commonwealth, 189 Va. 321, 325, 52 S.E.2d 872, 874 (1949). The Court explained,

> Leave should ordinarily be given to withdraw a plea of guilty if it was entered by mistake or under a misconception of the nature of the charge; through a misunderstanding as to its effect; through fear, fraud, or official misrepresentation; was made involuntarily for any reason; or even where it was entered inadvisedly, if any reasonable grounds is offered for going to the jury.

Id. (quoting 14 Am. Jur. Criminal Law § 287, at 961 (1938)).  Therefore, a defendant should be permitted to "withdraw a plea of guilty entered [i]nadvisedly when application therefor is duly made in good faith and sustained by proofs, and a proper offer is made to go to trial on a plea of not guilty."  Id. at 325-26, 52 S.E.2d at 874 (quoting Abbott, Criminal Trial Practice § 118, at 212 (4th ed. 1939)).  "[T]he proper emphasis, in accord with Parris, is upon whether it is in the least evident that the ends of justice will be served by permitting [the appellant] to withdraw [his] pleas of guilty and plead not guilty in their place."  Justus v. Commonwealth, 274 Va. 143, 155, 645 S.E.2d 284, 289 (2007).  "The Parris test serves two purposes.  The good faith requirement 'protects the integrity of the judicial process by precluding defendants from using a guilty plea as a subterfuge to manipulate the court,' Cobbins v. Commonwealth, 53 Va. App. 28, 34, 668 S.E.2d 816, 819 (2008), and the reasonable defense requirement 'defeats motions to withdraw which would result in an essentially futile trial.'"  Hubbard, 60 Va. App. at 208, 725 S.E.2d at 166-67.

Applying this legal standard, the Supreme Court of Virginia held in Bottoms v. Commonwealth, 281 Va. 23, 35-36, 704 S.E.2d 406, 413 (2011), that the trial court abused its discretion in denying the appellant's timely pre-sentencing motion to withdraw his guilty plea because appellant had asserted "a reasonable defense to be presented to the judge or jury trying the case."  The Court specifically rejected the trial court's finding that based upon the appellant's responses during the guilty plea colloquy "[t]he record reveals a knowing and voluntary guilty plea with knowledge of the consequences," because the trial court had failed to consider the reasonableness of the proffered defense.  Id. at 30, 704 S.E.2d at 410.  The Supreme Court further held there was nothing "vague" or "formal" in the asserted defense of lack of intent to defraud, or any evidence in the record that the appellant actually understood the specific elements of construction fraud at the time of his plea.  Id. at 35-36, 704 S.E.2d at 413.

In this case, shortly before the jury trial was to begin on the remaining charges, Smith made a pre-sentencing motion to withdraw his guilty plea on the driving while license suspended charge, explaining:

> [H]e pled guilty because he was driving in Prince William when they picked him up and, of course, he drove to his brother's place, and that's the substance of his alibi, but all of that is in Prince William County. None of the driving is in Stafford County. And so he was thinking more of the driving behavior as a whole and not the specific Stafford versus Prince William distinction.

The trial court denied the motion, holding that when questioned by the court, Smith "indicated that he understood the charge, he was advised that he stood charged with an offense which is alleged to have occurred in Stafford County."

Similar to the trial court's erroneous finding in Bottoms, that the plea was knowing, voluntary, and with knowledge of the consequences, the trial court in this case made a finding that Smith understood the charge and had been advised by counsel before entering his plea. However, like the trial court in Bottoms, the trial court in this case also failed to consider whether the proffered defense was reasonable. Similar to the appellant in Bottoms who presented a substantive defense to the charge, that, if proven at trial and accepted by the jury would support his contention that he was not guilty of construction fraud, Smith also offered an alibi defense, that if proven and accepted by the jury would also support his contention that he was not guilty of driving on a suspended license in Stafford County. Finally, similar to Bottoms in which the record indicated the appellant did not understand the specific elements of the crime he was charged with, the evidence in this case indicates that Smith was mistaken about the elements of the driving while license suspended charge—particularly that the conduct was alleged to have occurred in Stafford County. Concluding Smith met his burden to show his plea

- 11 -

had been "inadvisedly" made and proffered a reasonable defense, we hold that the trial court abused its discretion in denying Smith's motion to withdraw his guilty plea.[1]

Smith also argues that the remaining convictions were tainted by the improperly admitted driving conviction. However, this argument is not properly before this Court. First, this argument is not within the scope of Smith's second assignment of error, which is specifically limited to the driving while license suspended charge, and does not challenge any of the remaining convictions, thus barring appellate review. See Simmons v. Commonwealth, 63 Va. App. 69, 75 n.4, 754 S.E.2d 545, 548 n.4 (2014) (holding that argument on appeal was not "subject of the assignment of error," and thus was not reviewable). Moreover, this argument was not raised below to the trial court. See Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998) (holding "[t]he Court of Appeals will not consider an argument on appeal which was not presented to the trial court"). See also Rule 5A:18. Accordingly, this argument is procedurally barred.

### III.  CONCLUSION

Concluding that the exchange between Detective Gibbons and Smith in the back of the police car was not an interrogation, we hold that the encounter did not trigger Miranda, and thus the trial court did not err in declining to suppress Smith's statements. However, we hold that the trial court did abuse its discretion in denying Smith's motion to withdraw his guilty plea to the driving while license suspended charge and therefore reverse and remand to the trial court with

---

[1] In determining that the trial court abused its discretion in refusing to allow appellant to withdraw his guilty plea, we note that the Commonwealth would not have been prejudiced by the proposed withdrawal. The time between the guilty plea and the motion to withdraw it was not even measured in hours, but rather, minutes, and nothing substantive related to the case or witnesses occurred in the less than an hour time period.

direction that Smith be permitted to withdraw his guilty plea and to have the driving while license suspended charge proceed to trial, if the Commonwealth is so advised.

<u>Affirmed in part, and reversed in part.</u>