COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Huff, Judges Decker and AtLee
Argued at Chesapeake, Virginia

ELISEO GRANADO, JR.

v.     Record No. 1354-14-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE MARLA GRAFF DECKER
DECEMBER 5, 2017

UPON REMAND FROM THE SUPREME COURT OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Bruce H. Kushner, Judge

Kathleen A. Ortiz, Public Defender, for appellant.

Eugene Murphy, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Eliseo Granado, Jr., appeals his conviction for driving under the influence of alcohol, in

violation of Code § 18.2-266. He argues that the trial court erred by denying his motion to

suppress evidence pursuant to the United States Constitution. We hold that the circuit court did

not err in denying the motion. Accordingly, we affirm the conviction.

I. BACKGROUND[1]

In the early morning hours of December 25, 2012, Officer B.D. Keys of the Chesapeake

Police Department received a dispatched call for service about a disorderly male "who had been

asked to leave a gathering at 1901 Kelly Run." As Officer Keys neared the reported location, a

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] In ruling on the propriety of the trial court's decision on a motion to suppress, this Court
views the evidence in the light most favorable to the party who prevailed below, in this case the
Commonwealth. E.g., Branham v. Commonwealth, 283 Va. 273, 279, 720 S.E.2d 74, 77 (2012).

gray Cadillac DeVille sedan passed him. Keys did not notice the car being driven in an illegal or improper manner.

Officer Keys then received an update from the dispatcher that the disorderly man "was intoxicated, possibly armed," and had left the original location in "a light-colored Cadillac DeVille sedan." Officer Keys changed his route in order to find the Cadillac DeVille that had passed him. A second officer joined Keys in the search for the vehicle. They spotted a gray Cadillac DeVille with its headlights on parked on a nearby road.

Both officers stopped their police cars. Officer Keys directed his spotlight at the Cadillac and saw the appellant in the driver's seat. As the officers approached the sedan, they ordered the appellant to show his hands, but he did not comply despite being told to do so several times. When the appellant appeared to reach forward, both officers drew their weapons and pointed them at him. Keys noticed that the car's engine was running. The appellant took the keys out of the ignition and threw them over his shoulder into the back seat of the car. Officer Keys approached the driver's side of the car and forced the appellant to get out. Both officers "physically directed" the appellant to the rear of the car, "took" him to the ground and placed him in handcuffs with his hands behind his back. The two officers then brought him to his feet and told him to stand at the rear driver's side of the Cadillac. Through the car windows, they saw keys in the back seat but did not see a weapon.

Officer Keys noticed that the appellant's eyes were bloodshot and his face was flushed. The appellant appeared "disheveled" and had a strong odor of alcohol about his person. Officer Keys asked the appellant what he had been doing. The appellant responded, "What the fuck are you doing? I know my rights, this is wrong. I just parked my car and was going to sleep it off, so you didn't see me driving." Keys then asked the appellant if he had "been drinking." The appellant replied, "It doesn't matter, I wasn't driving." The appellant's speech was slurred.

The officers asked the appellant if he had any weapons or threw any weapons in the back seat. He replied, "No, I don't. I took my keys out of the ignition and threw them in the back seat." Two empty handgun holsters were found in the back seat of the appellant's car.

Officer Keys told the appellant that he wanted to conduct field sobriety tests, but the appellant refused to participate. Keys offered the appellant a preliminary breath test, but he again refused. Keys arrested him for driving under the influence of alcohol. The appellant was unsteady on his feet as he walked to the police car. The officer advised him of his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966).

The appellant asked the trial court to suppress the statements that he made to Keys prior to being advised of his Miranda rights.[2] He also requested that the trial court suppress evidence of all the events that occurred after the officers removed him from his car. He argued that the police kept him under detention even after the officers had dispelled the concern that he was armed. The trial court denied the motion to suppress.

After hearing the evidence, the court convicted the appellant of driving while under the influence of alcohol, in violation of Code § 18.2-266. He was sentenced to ninety days in jail, with all time suspended.

## II. ANALYSIS

The appellant argues that the trial court erred by denying his motion to suppress evidence of his statements to police in violation of the Fifth Amendment of the United States Constitution. He also contends that the court erred under the Fourth Amendment by not suppressing evidence obtained during his continued detention after police determined that he did not have a weapon and was not engaged in disorderly conduct.

---

[2] The appellant filed his motion to suppress less than seven days before trial, and the Commonwealth objected to it as untimely. See Code § 19.2-266.2; Rule 3A:9. The trial court found "good cause" to hear the motion and overruled the objection.

"When challenging the denial of a motion to suppress evidence on appeal, the defendant bears the burden of establishing that reversible error occurred." Mason v. Commonwealth, 291 Va. 362, 367, 786 S.E.2d 148, 151 (2016). Both of the assignments of error on appeal present mixed questions of law and fact. See, e.g., Thompson v. Keohane, 516 U.S. 99, 102 (1995); McCain v. Commonwealth, 275 Va. 546, 551, 659 S.E.2d 512, 515 (2008). In ruling on the propriety of a circuit court's decision to deny the motion, the appellate court views the evidence in the light most favorable to the Commonwealth. E.g., Hairston v. Commonwealth, 67 Va. App. 552, 560, 797 S.E.2d 794, 798 (2017). This Court also affords to the prevailing party the benefit of all inferences fairly deducible from the evidence. Mason, 291 Va. at 367, 786 S.E.2d at 151. Further, we are "bound by the circuit court's findings of historical fact unless 'plainly wrong' or without evidence to support them." Wolfe v. Commonwealth, 67 Va. App. 97, 101, 793 S.E.2d 811, 813 (2016) (quoting McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*)). In addition, "we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." Smith v. Commonwealth, 65 Va. App. 288, 295, 777 S.E.2d 235, 239 (2015) (quoting McGee, 25 Va. App. at 198, 487 S.E.2d at 261).

## A. Fifth Amendment

The appellant argues that the trial court erred in denying his motion to suppress the statements that he had "just parked [his] car and was going to sleep it off" and that the officers had not seen him driving. He contends that Officer Keys questioned him when he was in custody and had not yet received his Miranda warnings.

Pursuant to the guarantees of the Fifth Amendment, "no 'person . . . shall be compelled in any criminal case to be a witness against himself.'" Gibson v. Commonwealth, 57 Va. App. 772, 778, 706 S.E.2d 541, 544 (2011) (quoting U.S. Const. amend. V). In order to protect this right,

when law enforcement officers question a suspect who is in custody, they must first provide the suspect with appropriate warnings pursuant to the Fifth Amendment. See Miranda, 384 U.S. at 467; Commonwealth v. Quarles, 283 Va. 214, 220, 720 S.E.2d 84, 87 (2012). Those warnings include the right to remain silent, the right to an attorney, and the right to have that attorney present during questioning by the police. Miranda, 384 U.S. at 467-70; Quarles, 283 Va. at 220, 720 S.E.2d at 87. "Statements obtained by law enforcement officers in violation of this rule generally will be subject to exclusion for most proof purposes in a criminal trial." Dixon v. Commonwealth, 270 Va. 34, 39, 613 S.E.2d 398, 400 (2005).

The determination of whether a suspect is in custody and consequently "entitled to Miranda warnings, presents a mixed question of law and fact." Thompson, 516 U.S. at 102. "[W]hen an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized." Brooks v. Commonwealth, 282 Va. 90, 96, 712 S.E.2d 464, 467 (2011) (quoting Miranda, 384 U.S. at 478). An individual is "in custody" for Miranda purposes only when he has been formally arrested or the police restraint on his "freedom of movement" rises to the level "associated with a formal arrest." Tizon v. Commonwealth, 60 Va. App. 1, 19, 723 S.E.2d 260, 269 (2012) (quoting Brooks, 282 Va. at 96, 712 S.E.2d at 467).

Resolution of the issue turns on "how a reasonable person in the suspect's situation would have understood his circumstances." Hasan v. Commonwealth, 276 Va. 674, 679, 667 S.E.2d 568, 571 (2008) (quoting Dixon, 270 Va. at 40, 613 S.E.2d at 401). The determination of whether a suspect is in custody "requires an objective focus," rather than a subjective view. Dixon, 270 Va. at 40, 613 S.E.2d at 401. Thus, "if a reasonable person in the suspect's position would have understood that he or she was under arrest," Miranda warnings "are required" before

questioning. Aldridge v. Commonwealth, 44 Va. App. 618, 642, 606 S.E.2d 539, 551 (2004) (quoting Harris v. Commonwealth, 27 Va. App. 554, 564, 500 S.E.2d 257, 262 (1998)).

Generally, "a person temporarily detained pursuant to an 'ordinary traffic stop[]' is not 'in custody' for the purposes of Miranda." Harris, 27 Va. App. at 564, 500 S.E.2d at 262 (alteration in original) (quoting Berkemer v. McCarty, 468 U.S. 420, 440 (1984)). However, "a detained motorist will be entitled to the protections set forth in Miranda if he . . . 'thereafter is subjected to treatment that renders him "in custody" for practical purposes.'" Id. (quoting Berkemer, 468 U.S. at 440). This is the focus of the analysis here—whether the appellant was essentially "in custody" rather than simply being held as part of an investigatory detention at the time he made the challenged statements.

There are a number of factors relevant to determining whether a suspect was in custody. Pertinent circumstances include the manner in which the individual "was questioned, particularly the number of officers present, the coercive character of the encounter, and the degree to which [the person] was restrained." Hasan, 276 Va. at 680, 667 S.E.2d at 571. In addition, courts consider the duration of the interaction and "the extent to which the officers' beliefs concerning" the individual's "potential culpability" were expressed. Harris, 27 Va. App. at 565, 500 S.E.2d at 262. This list, while important for purposes of this case, is not exhaustive.

The law provides many guideposts and factors to consider in this fact-driven analysis. Nevertheless, "there is no 'litmus-paper test for distinguishing . . . when a seizure exceeds the bounds of an investigative stop.'" Id. at 566, 500 S.E.2d at 263 (quoting DePriest v. Commonwealth, 4 Va. App. 577, 586, 359 S.E.2d 540, 544 (1987)). Each case must be reviewed in light of application of the unique facts to the relevant law.

"Drawing weapons, handcuffing a suspect, placing a suspect in a patrol car for questioning, or using or threatening to use force does not necessarily elevate a lawful stop into a

custodial arrest for Miranda purposes." Id. (quoting United States v. Leshuk, 65 F.3d 1105, 1109-10 (4th Cir. 1995)). In fact, "a brief but complete restriction of a suspect's liberty is valid under Terry[ v. Ohio, 392 U.S. 1, 9 (1968)], and the police are permitted to use methods of restraint that are reasonable under the circumstances." Id.

In this case, Officer Keys had received radio calls about a disorderly person who was intoxicated, possibly armed, and driving a light-colored Cadillac DeVille. Officer Keys spotted a gray Cadillac DeVille in the vicinity. He and the other police officer had reason to believe that the intoxicated driver was armed, so they told him to show his hands as they approached the parked vehicle. When the appellant did not comply with the repeated commands and reached forward, the police drew their weapons and forcibly removed him from the car. They handcuffed him for their safety until they could determine whether he had any weapons. The encounter was brief. The two officers did not use threatening language. The appellant was not told that he was under arrest, nor was he put in a police car. A reasonable person would not have believed that he was under arrest at the time that he made the statements. The restraint on the appellant's "freedom of movement" did not rise to the level "associated with a formal arrest." See Tizon, 60 Va. App. at 19, 723 S.E.2d at 269 (quoting Brooks, 282 Va. at 96, 712 S.E.2d at 467). Therefore, the appellant was not in custody for purposes of Miranda at the time that he made the statements, and the trial court did not err by holding that he was not entitled to Miranda warnings at that time.[3]

In support of his position, the appellant cites Dixon, 270 Va. 34, 613 S.E.2d 398, and Hasan, 276 Va. 674, 667 S.E.2d 568. In both cases, the Supreme Court of Virginia held that the

---

[3] In light of this conclusion, we do not address the Commonwealth's argument that any error was harmless. See generally Blackman v. Commonwealth, 45 Va. App. 633, 639 n.1, 613 S.E.2d 460, 463 n.1 (2005) (noting that the Court's holding that there was no Sixth Amendment violation rendered analysis of the Commonwealth's harmless error argument unnecessary).

defendants were in custody for <u>Miranda</u> purposes. In <u>Dixon</u>, 270 Va. at 41, 613 S.E.2d at 401, the Court concluded that a reasonable person subjected to the restraints of *both* handcuffs and placement in a locked police car "would conclude that he was in police custody." In <u>Hasan</u>, 276 Va. at 677, 667 S.E.2d at 570, six to eight police officers and a K-9 unit were present during a traffic stop involving the defendant. The officers drew firearms, made a cone formation, removed the defendant from the vehicle, and handcuffed him. <u>Id.</u> The Supreme Court noted that "[t]he nature of the detention was not similar to an ordinary traffic stop." <u>Id.</u> at 680, 667 S.E.2d at 571-72. Under those circumstances, the Court found that a reasonable person in the defendant's position "would have understood that his freedom was being restricted to a degree associated with a formal arrest." <u>Id.</u> at 681, 667 S.E.2d at 572 (quoting <u>Dixon</u>, 270 Va. at 40, 613 S.E.2d at 401).

Neither <u>Dixon</u> nor <u>Hasan</u>, however, suggest that a reasonable person in the appellant's position would have believed that he was under arrest at the time that he made the statements. The numerous differences present in this case support the conclusion that the appellant was not in custody for <u>Miranda</u> purposes. Here, there were only two police officers present. They physically restrained the appellant only to the extent necessary to ensure their safety, briefly drew their weapons, did not put him in a police car, and used no threatening language before asking him any questions. Only one officer questioned the appellant and inquired as to what he had been doing and did not communicate any particular suspicion of a crime. In addition, the second question, whether the appellant had "been drinking," did not "confront[]" the appellant with "evidence of guilt." <u>See</u> <u>Wass v. Commonwealth</u>, 5 Va. App. 27, 33, 359 S.E.2d 836, 839 (1987) (quoting <u>United States v. Bautista</u>, 684 F.2d 1286, 1292 (9th Cir. 1982)). Therefore, we hold that the appellant was not in custody and <u>Miranda</u> warnings were not required prior to him making the challenged statements.

The appellant argues that the "trial court erred when it denied [his] motion to suppress all evidence obtained when the officers continued their detention of [him] despite having dispelled the suspicion of criminal activity that initially justified the detention." He contends that the police failed to release him once they determined that he did not have a weapon and was not engaged in disorderly conduct. He suggests that the police no longer had reasonable suspicion of criminal activity and that instead, there was an "unreasonable seizure" of his person in violation of the Fourth Amendment.

"A defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review de novo on appeal." McCain, 275 Va. at 551, 659 S.E.2d at 515. "In making such a determination, we give deference to the factual findings of the circuit court, but we independently determine whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment." Id. at 552, 659 S.E.2d at 515. In addition, "we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." Smith, 65 Va. App. at 295, 777 S.E.2d at 239 (quoting McGee, 25 Va. App. at 198, 487 S.E.2d at 261). Police may briefly stop a citizen for investigatory purposes, "if there are articulable facts supporting a reasonable suspicion that a person has committed a criminal offense." Sidney v. Commonwealth, 280 Va. 517, 524, 702 S.E.2d 124, 128-29 (2010) (quoting Hayes v. Florida, 470 U.S. 811, 816 (1985)).

The appellant does not challenge his initial detention, but suggests that it was based on a reasonable suspicion of only disorderly conduct by a possibly armed individual. The record, however, demonstrates that the updated information provided by the dispatcher also supported the reasonable suspicion that the appellant's car matched the description of one being operated by an intoxicated driver. See Code § 18.2-266 (prohibiting driving under the influence of

alcohol or drugs, including driving while intoxicated). Further, in light of the report that the driver in question was "possibly armed" and the appellant's failure to comply with the repeated orders to show his hands, the officers detained him in a reasonable manner to ensure their safety. See, e.g., Kidd v. Commonwealth, 38 Va. App. 433, 444, 565 S.E.2d 337, 342 (2002) (noting that during a lawful detention, a law enforcement officer "is 'authorized to take such steps as [are] reasonably necessary to protect [his and others'] personal safety'" (alterations in original) (quoting Welshman v. Commonwealth, 28 Va. App. 20, 34, 502 S.E.2d 122, 128-29 (1998) (*en banc*))); Harris, 27 Va. App. at 563, 500 S.E.2d at 261 (holding that the trooper's "display of his firearm" was "a reasonable response to [the defendant's] failure to show his hands while moving in [his] direction").

The appellant argues that once the officers determined that he was not armed they were obligated to release him.[4] This argument fails based on application of the law to the facts of this case. The initial detention was necessary to investigate a report about an intoxicated driver in a car of the same make and model as the appellant's vehicle. A temporary detention is proper under the Fourth Amendment if, under the "'totality of the circumstances[,]' . . . the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." Mason, 291 Va. at 368, 786 S.E.2d at 151 (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)). "The test is not what the officer thought" but, rather, "whether the facts and circumstances apparent to him at the time of the [seizure] were such as to create in the mind of a reasonable officer in the same position a suspicion that a violation of the law [had occurred,] was occurring[,] or was about to occur." Id.; see, e.g., Hairston, 67 Va. App. at 565, 797 S.E.2d at 800. This standard

---

[4] Generally, "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." Rodriguez v. United States, 135 S. Ct. 1609, 1612 (2015).

"requires far more than an officer's 'hunch' or 'gut feeling' but far less than actual proof." Mason, 291 Va. at 369, 786 S.E.2d at 152.

Based on the information received from dispatch, the officers believed that they were looking for an intoxicated driver who may have been armed. They saw the appellant sitting in a car that matched the description and was parked in the area of the report. Once they interacted with the appellant, the officers personally observed that he smelled of alcohol and had bloodshot eyes. His speech was slurred, and his face was flushed. He repeatedly refused to show his hands when ordered to do so. The appellant told the officers that he "just parked [his] car and was going to sleep it off" and that he had removed his keys from the ignition and threw them in the back seat. When asked if he had been drinking, the appellant replied, "It doesn't matter, I wasn't driving."

In light of these facts, regardless of whether the officers were no longer investigating the initial disorderly conduct report or whether they believed that the appellant was armed, the facts clearly supported reasonable suspicion that the appellant had been driving while intoxicated. Rather than dispelling the suspicion that the appellant had operated the vehicle under the influence of alcohol, the circumstances that quickly developed during the detention bolstered that suspicion. At that point, the officers had, at the very least, reasonable suspicion to continue to detain the appellant to investigate further.[5] See Enrique v. Commonwealth, 283 Va. 511, 517, 722 S.E.2d 252, 255 (2012). Consequently, the continued detention was permitted under the

---

[5] In light of this conclusion, which is consistent with the analysis conducted by the trial court, we do not address the Commonwealth's argument that the circumstances established probable cause to arrest the appellant. See, e.g., McGhee v. Commonwealth, 280 Va. 620, 624, 701 S.E.2d 58, 60 (2010) (explaining the probable cause standard).

circumstances to allow the officers to confirm or dispel the suspicion that the appellant had operated the vehicle while under the influence of alcohol.[6]

Applying the standard of objective reasonableness to the totality of the circumstances, the evidence supports the conclusion that the officers had, at the very least, reasonable suspicion to continue the investigatory detention up to the point of the arrest. Therefore, the trial court did not err in denying the motion to suppress.

### III. CONCLUSION

The evidence, viewed under the proper standard, establishes that when the officers initially detained the appellant, he was not in custody for purposes of Miranda. Further, the totality of the circumstances supports the conclusion that the officers had reasonable and articulable suspicion of illegal activity to continue the appellant's detention beyond the concerns of disorderly conduct or that he was armed in order to investigate whether he was driving while intoxicated. Consequently, we hold that the circuit court correctly denied the appellant's motion to suppress. For these reasons, we affirm the conviction for driving under the influence of alcohol.

Affirmed.

---

[6] Officer Keys did in fact attempt to do so by telling the appellant that he wanted to conduct field sobriety tests and offering a breath test, but the appellant refused to participate. He was then arrested for driving under the influence of alcohol.