UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:   Judges Petty, Russell and AtLee
Argued by teleconference


CANTON THOMAS JOHN JOHNSON

MEMORANDUM OPINION[*] BY
JUDGE RICHARD Y. ATLEE, JR.
JUNE 11, 2019

v.        Record No. 0899-18-1

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Frederick B. Lowe, Judge Designate[1]

Robert L. Wegman (The Law Office of Robert L. Wegman, P.L.C.,
on brief), for appellant.

Brittany A. Dunn-Pirio, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Canton Thomas John Johnson was convicted, after a bench trial, of two counts of

possession with the intent to distribute in violation of Code § 18.2-248(A).[2]  Johnson argues that

his convictions should be reversed for three reasons.  First, he argues that the trial court should

have suppressed the evidence obtained from his pockets because the search violated the Fourth

Amendment.  Second, he contends that the trial court should have suppressed a statement he

made because it was obtained in violation of his Miranda rights.  Third, Johnson argues that the

evidence at trial was insufficient to prove he intended to distribute the drugs in his possession.

For the following reasons, we disagree and affirm the circuit court.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Judge Lowe presided over the trial and signed the final order.  Judge J. Randall Smith
ruled on the suppression issues.

[2] One count related to the lysergic acid diethlamide ("LSD") in his possession, and the
other count related to the methylenedioxyamphetamine ("MDA") in his possession.

## I. BACKGROUND

"Under well-settled principles of appellate review, we consider the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party below." Beck v. Commonwealth, 66 Va. App. 259, 262 (2016) (quoting Smallwood v. Commonwealth, 278 Va. 625, 629 (2009)).

On December 9, 2016, Officer Souther of the Chesapeake Police Department pulled over a vehicle because it had a broken brake light on the passenger side. Johnson was the driver and sole occupant. As Officer Souther approached the vehicle to ask for Johnson's license and registration, she smelled burnt marijuana emanating from the vehicle. She asked Johnson to step out of the vehicle so she could search it. Although Johnson was upset and argued with Officer Souther, he ultimately complied and went to stand at the curb behind his car where a second officer was waiting.

During the search of the car, Officer Souther discovered a clear plastic baggy on the back seat. The baggy contained a white granulated substance, which Officer Souther believed was a narcotic, though she later testified that she was not certain which narcotic. Officer Souther also discovered a small amount of flakes, which from her training and experience she believed was marijuana, inside the center console.

After completing the search of the interior of the car, Officer Souther asked Johnson how to open the trunk, and he explained that it required the car key. Johnson reached into his pocket and pulled out the key. When he did so, Officer Souther noticed clear plastic baggies sticking out of his pocket. Johnson quickly stuffed his hand back into his pocket and concealed the baggies.

Officer Souther asked Johnson to put his hands on his head and asked him what was in the plastic baggies in his pocket. Johnson denied that he had anything in his pocket and refused

to put his hands above his head.  Officer Souther handcuffed Johnson and explained to him that he was being detained because he was uncooperative, but that he was not under arrest.

After handcuffing him, Officer Souther reached into Johnson's pocket and pulled out six plastic baggies:  four baggies contained a white granulated substance like that found in the back seat of the car, one baggy contained four capsules filled with the same granulated substance, and one baggy contained nine individually wrapped pieces of foil.  Officer Souther asked what the substances in the baggies were, and Johnson did not answer her question.

Johnson continued to talk while Officer Souther searched him.  He repeatedly stated that he was going to jail and that he had nothing in his pockets.  Officer Souther again explained that he was only being detained and that she had seen something in his pocket.  Johnson said that he could not believe the police were going through his pockets.  Officer Souther responded, "What did I just say?  I just asked you what the plastic baggies in your pocket were."

Johnson again denied that she had seen anything in his pocket.  He continued to mutter about how he was trying to do better in life and how he tried to get a new job.  During his rambling, and approximately thirty seconds after Officer Souther's last question, Johnson stated, "I have to try and sell some drugs and make a fucking living and not die."

Officer Souther quickly concluded her search and read Johnson his <u>Miranda</u> rights.  She proceeded to question him about the substances in the baggies.  Johnson told her that they were MDMA[3] and LSD.  Johnson also denied selling drugs, and he explained away his prior statement as him "just saying shit."

Johnson was charged with two counts of possession with intent to distribute.  He filed a pretrial motion to suppress both the drugs discovered in his pocket and his statement about

---

[3] The certificate of analysis later revealed that the suspected MDMA was actually MDA, a drug closely related to MDMA.

selling drugs. He argued that Officer Souther seeing a plastic bag did not provide probable cause for her to search his pocket. He also argued that since she did not intend to arrest him prior to searching his pockets, the search was not justified as a search incident to arrest. Finally, he argued that his statement about selling drugs was the product of custodial interrogation and that he had not yet been read his Miranda rights.

At the hearing, Officer Souther testified about the incident, and the body camera recording of the incident was played for the trial court. Officer Souther explained on direct examination that if she had not searched his pockets, she still would have arrested Johnson for possession based on the baggy in the car that she thought contained narcotics. On cross-examination, however, she admitted that she could not definitively say whether she intended to arrest him at that point because she did not know what the substance was. On re-direct, she testified that she believed it was a narcotic, and though she would have tried to identify the narcotic first, she would have arrested him for being in possession of a narcotic.

The trial court denied the motion on both grounds. It concluded that Officer Souther had probable cause to arrest Johnson for possession of a narcotic and that the search of his pockets was justified as a search incident to arrest. The trial court also determined that Johnson was not in custody at the time he made his statement and, even if he was, his statement was spontaneous and was not in response to a question.

The case proceeded to trial. Johnson made a motion to strike at the conclusion of the Commonwealth's evidence, arguing the evidence was insufficient to prove intent to distribute. The trial court denied the motion.

Johnson presented testimony from Detective Higazi from the Chesapeake Police Department. Detective Higazi testified that the evidence was consistent with personal use of the LSD regardless of the statement Johnson made. He also stated that the evidence was consistent

with personal use of the MDA if he did not consider Johnson's statement about selling drugs. On cross-examination, however, when he heard the whole statement, he reconsidered, saying, "Then I would say that would be consistent with distribution."

After Johnson testified, he renewed his motion to strike, which the trial court denied. The trial court convicted Johnson of both counts of possession with intent to distribute.[4] This appeal followed.

## II. ANALYSIS

### A. *Motion to Suppress*

#### 1. Standard of Review

In reviewing the denial of a motion to suppress, "we determine whether the accused has met his burden to show that the trial court's ruling, when the evidence is viewed in the light most favorable to the Commonwealth, was reversible error." Roberts v. Commonwealth, 55 Va. App. 146, 150 (2009). We are bound by the trial court's findings of fact unless plainly wrong or without evidence to support them, but we review "the trial court's application of legal standards to the particular facts of the case *de novo*." Smith v. Commonwealth, 65 Va. App. 288, 295-96 (2015).

#### 2. Probable Cause to Search Johnson's Pocket

Johnson argues that Officer Souther did not have probable cause to search his pockets, and, therefore, the trial court should have suppressed the drugs discovered in his pockets.

---

[4] There was some discrepancy at the sentencing hearing as to whether Johnson was convicted of two counts of possession or two counts of possession with the intent to distribute. The sentencing order reflected possession, but the presentence report stated that it was possession with the intent to distribute. Both parties agreed that the correct convictions were possession with the intent to distribute. The trial court noted that it needed to correct the conviction order to reflect the proper offense. No corrected order was ever entered, and the sentencing order reflects the same incorrect convictions.

Under the Fourth Amendment, "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." Joyce v. Commonwealth, 56 Va. App. 646, 658 (2010) (quoting Atwater v. Lago Vista, 532 U.S. 318, 354 (2001)). "Once 'probable cause exists to arrest a person, a constitutionally permissible search of the person incident to arrest may be conducted by an officer *either before or after* the arrest if the search is contemporaneous with the arrest.'" Slayton v. Commonwealth, 41 Va. App. 101, 108 (2003) (quoting Italiano v. Commonwealth, 214 Va. 334, 336 (1973)).

"[P]robable cause exists when the facts and circumstances within the officer's knowledge . . . alone are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed." McGhee v. Commonwealth, 280 Va. 620, 624 (2010) (quoting Jones v. Commonwealth, 279 Va. 52, 59 (2010)). "Courts employ a 'common sense approach' not a 'hypertechnical, rigid, and legalistic analysis' when reviewing probable cause determinations." Powell v. Commonwealth, 57 Va. App. 329, 335 (2010) (quoting Derr v. Commonwealth, 242 Va. 413, 421 (1991)). "[P]robable cause 'requires *only* a probability or substantial chance of criminal activity, not an actual showing of such activity.'" Id. at 336 (quoting Illinois v. Gates, 462 U.S. 213, 245 n.13 (1983)). Thus, "it is not necessary for the facts to be 'sufficient to convict' the accused of the offense." Slayton, 41 Va. App. at 107 (quoting Gomez v. Atkins, 296 F.3d 253, 262 (2002)).

Code § 18.2-250 makes it unlawful to possess a controlled substance. "[I]f an officer smells the odor of marijuana in circumstances where the officer can localize its source to a person, the officer has probable cause to believe that the person has committed or is committing the crime of possession of marijuana." Bunch v. Commonwealth, 51 Va. App. 491, 496 (2008) (quoting United States v. Humphries, 372 F.3d 653, 660 (4th Cir. 2004)). Officer Souther

smelled burnt marijuana emanating from the car. Johnson was the only person in the car. Furthermore, when Officer Souther searched the vehicle—a search that Johnson concedes was supported by probable cause—she found flakes that she suspected were marijuana in the center console.[5]

Johnson argues that the Commonwealth cannot "bootstrap a probable cause justification" because Officer Souther did not intend to arrest Johnson prior to finding the drugs in his pocket. But probable cause depends only on "'objective facts,' not the 'subjective opinion' of a police officer." Slayton, 41 Va. App. at 109 (quoting Golden v. Commonwealth, 30 Va. App. 618, 625 (1999)). "[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." Id. (quoting Whren v. United States, 517 U.S. 806, 813 (1996)). Because the objective facts establish that Officer Souther had probable cause to arrest Johnson for possession of marijuana, she had the authority to search him incident to arrest, regardless of whether she actually intended to arrest him.

### 3. Miranda Rights

Johnson argues his statement about selling drugs should have been suppressed because he was subject to custodial interrogation, without being informed of his Miranda rights, at the time he made the statement.

"[T]he United States Supreme Court has long recognized that Miranda warnings are implicated only during a custodial interrogation." Aldridge v. Commonwealth, 44 Va. App. 618, 641 (2004). "Thus, the safeguards, now commonly known as 'Miranda warnings' are only

---

[5] Although the odor of marijuana and the suspected flakes of marijuana in the console were sufficient to provide Officer Souther with probable cause to arrest Johnson, we note that she also found a baggy containing a white granulated substance that she reasonably believed to be a narcotic.

required when a suspect is both (1) in custody and (2) subjected to interrogation; the warnings are not required where an individual is simply in custody." Smith, 65 Va. App. at 296.

"Even when otherwise applicable, Miranda bars from evidence only a suspect's responses to police *interrogation* and has no impact on a suspect's volunteered statements." Tizon v. Commonwealth, 60 Va. App. 1, 20 (2012) (quoting Testa v. Commonwealth, 55 Va. App. 275, 283 (2009)). "[V]olunteered statements of any kind are not barred by the Fifth Amendment and are not considered the product of an interrogation." Smith, 65 Va. App. at 296-97. "If a suspect's statement was not foreseeable, then it is volunteered." Blain v. Commonwealth, 7 Va. App. 10, 15 (1988). This requires determining "whether an objective observer would view an officer's words or actions as designed to elicit an incriminating response." Id.

Johnson argued on brief that he was both in custody and subject to interrogation. During oral argument, however, Johnson's counsel conceded that Johnson's statement was not the product of interrogation, saying, "I'm not gonna lose all credibility and tell you that I think there was an interrogation. I think it was uh perhaps a spontaneous statement." Because we agree with Johnson's concession, we need not determine whether Johnson was in custody.

Johnson did not make the statement in response to any questioning by police. The statement in question came approximately thirty seconds after Officer Souther asked a question. During that thirty seconds, Johnson rambled about how his life was over and he had tried to do better. It was after this rambling that he voluntarily stated that he had to sell drugs to make a living. This statement was not a foreseeable result of any question or action by Officer Souther. Nor could it be considered responsive to the last question asked.

When a defendant voluntarily makes a statement, an officer is not required to ignore what he or she is hearing. Gates v. Commonwealth, 30 Va. App. 352, 357 (1999). "'Voluntary confessions,' after all, 'are not merely a proper element in law enforcement, they are an

unmitigated good, essential to society's compelling interest in finding, convicting, and punishing those who violate the law.'" Tizon, 60 Va. App. at 19 (quoting Howes v. Fields, 565 U.S. 499, 514 (2012)). Because the statement was voluntary, it does not fall within the purview of Miranda, and the trial court did not err in denying the motion to suppress.

## B. *Sufficiency*

Johnson argues that the evidence was insufficient to support his convictions because the Commonwealth did not prove he intended to distribute the drugs.[6] We disagree.

"When reviewing the sufficiency of the evidence to support a conviction, the Court will affirm the judgment unless the judgment is plainly wrong or without evidence to support it." Bolden v. Commonwealth, 275 Va. 144, 148 (2008). We view the evidence in the light most favorable to the Commonwealth, and in so doing, "we must discard the evidence of the accused in conflict with that of the Commonwealth . . . ." Scott v. Commonwealth, 55 Va. App. 166, 172 (2009) (*en banc*).

Code § 18.2-248(A) provides that, "it shall be unlawful for any person to . . . possess with intent to . . . distribute a controlled substance . . . ." A violation occurs when an individual possesses "the controlled substance contemporaneously with his intention to distribute that substance." Christian v. Commonwealth, 33 Va. App. 704, 716 (2000) (*en banc*) (quoting Stanley v. Commonwealth, 12 Va. App. 867, 869 (1991) (*en banc*)).

A defendant's admission may be used as direct evidence to establish intent to distribute. Holloway v. Commonwealth, 57 Va. App. 658, 666 (2011) (*en banc*). Absent an admission, or

---

[6] On brief, Johnson argues that even if the evidence showed possession with the intent to distribute, it was only as an accommodation under Code § 18.2-248(D). "[A] specific argument must be made to the trial court at the appropriate time, or the allegation of error will not be considered on appeal." Edwards v. Commonwealth, 41 Va. App. 752, 760 (2003) (*en banc*); see also Rule 5A:18. Johnson did not raise accommodation as a defense (or mention it at all) in the trial court below. Consequently, we will not now consider it on appeal.

to supplement an admission, intent to distribute may be proved by circumstantial evidence. Id. Virginia courts look at a number of factors, such as packaging and quantity of the drugs, to determine whether an intent to distribute existed. "The quantum of evidence necessary to prove an intent to distribute depends on the facts and circumstances of each case." Scott, 55 Va. App. at 173 (quoting Askew v. Commonwealth, 40 Va. App. 104, 110 (2003)).

Here, we have direct evidence that Johnson intended to distribute the drugs. Johnson admitted to selling the drugs for pecuniary gain when he told Officer Souther, "I have to try to sell some drugs and make a fucking living and not die." The officers discovered two different types of drugs, which were divided into small amounts and separately packaged.

Johnson's expert provided additional evidence of intent to distribute. Though the expert "teeter[ed] on the line" between distribution and personal use based on the weight of the MDA alone, other factors were consistent with distribution. The expert testified that the packaging of the drugs was consistent with distribution; the drugs were individually packaged in separate baggies each containing a small amount. Moreover, when the expert heard Johnson's statement, he ultimately concluded that the facts "would be consistent with distribution." It is reasonable to infer he was referring to both the LSD and the MDA.

Johnson argues that the Commonwealth did not consider his subsequent statement denying that he intended to distribute the drugs. He also argues that his admission could have applied to only one or none of the drugs. Further, Johnson argues that his expert stated that the possession of LSD was consistent with personal use regardless of his statement about selling drugs.[7] But these arguments ignore the prism through which we must view the evidence on

---

[7] In addition to ignoring the standard of review, this argument takes Detective Higazi's testimony out of context. He noted that he could not really hear the statement in the body camera recording, and the report he was provided said the statement was referring specifically to MDA. When he heard the entirety of the statement on cross-examination, he appeared to change his opinion and conclude that the evidence was consistent with distribution.

appeal. We must view the evidence in favor of the Commonwealth and discard any evidence that conflicts with the Commonwealth's evidence. See Scott, 55 Va. App. at 172.

Given the direct evidence of Johnson's admission and the circumstantial evidence of the packaging, the evidence was sufficient to establish that Johnson intended to distribute the drugs.

III. CONCLUSION

For the foregoing reasons, we affirm the decision of the trial court. We remand, however, for the trial court to enter an order correcting the conviction and sentencing orders to accurately reflect the offenses for which Johnson was convicted.

Affirmed and remanded.